OLIVER F. ROCK, sometimes known as OLIVER ROCK, Plaintiff and Respondent, v. WELDON J. BIRDWELL and PATRICIA BIRDWELL, husband and wife, Defendants, Third-Party Plaintiffs and Appellants.

No. 11105.
Submitted May 11, 1967. Decided June 2, 1967.
Rehearing denied July 7, 1967.
429 P.2d 634.

450

Sandall, Moses & Cavan, Billings, for appellants.

Denzil R. Young, Baker, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered upon findings of fact and conclusions of law by the district court, sitting in Prairie County after trial without a jury.

The decretal portion of the judgment reads in part:

"* * * that Oliver F. Rock is the owner of Section 22 * * * subject to the declaration of trust described in Finding of Fact No. XXII, and is the owner of the Federal Grazing Leases covering lands described in Plaintiffs' Exhibit 1, subject to the control and determinations as may be made by the Bureau of Land Management and the Prairie County Grazing District. That the title of Oliver F. Rock, plaintiff in this action, to the lands and leases herein involved is superior to and paramount as against the defendants, Weldon J. Birdwell and Patricia Birdwell, and that the contracts for deed upon which defendants Birdwell base their claims are of no force nor effect. * * *"

The suit involves the ownership of a ranch consisting of a section of deeded land and some sixteen sections of government lands under annual permits. The "base land" of one section was apparently inadequate to hold the annual permits, and subsequently other "base lands" were purchased. The ranch was described as a "very good ranch" by some and as "run down" by others with fences and buildings in somewhat poor condition.

The suit here was brought as a quiet title action by Oliver Rock to quiet title to the E½ of section 22, joining Birdwells, husband and wife, as defendants, asserting a claim of title by Birdwells by virtue of a contract for deed from Arthur Rock, who it was asserted had no right and that therefore such contract was invalid.

Subsequently by various pleadings Birdwells asserted a claim to the ranch, and likewise Arthur Rock, brother of plaintiff Oliver Rock, became a third party plaintiff as will appear more particularly hereafter.

Arthur L. Rock, third party plaintiff and defendant, hereinafter referred to as Art Rock, on or about March 18, 1960, and for a long time prior thereto, was the operator and ostensible owner of the ranch.

On or before March 18, 1960, Art Rock was delinquent in the payment of the permit fees for the year 1959 and had been advised by the aforementioned agencies that unless the fees were paid on or before March 18, 1960, he was in danger of losing his permits.

On the morning of March 18, 1960, Art Rock went to the home of one of his neighbors, Marvin Hough, and requested Hough to take him to Miles City to see a man by the name of McNamara about borrowing money to pay the delinquent permit fees. Mr. Hough took Art Rock to Miles City but counseled him against dealing with McNamara and instead took him to the home of the Birdwells, where his mother, Aletha Hough, was employed with the intention of ascertaining whether or not Aletha Hough would loan Art Rock the money to pay the grazing permits.

Upon arriving at the Birdwell home, Marvin went into the home and advised his mother of Art Rock's predicament and asked her if she would loan him the money, which she declined to do. Marvin Hough and Art Rock then left the Birdwell home. In the meantime, Weldon Birdwell came home for lunch and Mrs. Hough advised him of Art Rock's difficulties

and the fact that he had been there seeking to borrow some money. Mr. Birdwell advised Mrs. Hough that perhaps he might help Art Rock if she, Mrs. Hough, could locate him, whereupon Mrs. Hough and Mrs. Birdwell left the Birdwell home in Mrs. Birdwell's car and caught up with Marvin Hough and Art Rock just outside the McNamara home. Upon being advised that Birdwell might be of assistance to him, Art Rock entered Mrs. Birdwell's car and was taken by her and Mrs. Hough to Weldon Birdwell's office.

In Mr. Birdwell's office it appears that Art Rock advised Birdwell of his problem and they had a considerable discussion concerning Art Rock's financial condition. During their discussion, Birdwell advised Rock that he would not loan him any money but did suggest that he would purchase a half interest in the ranch if Art wanted to sell. Art Rock concluded to sell half interest in the place to Birdwell and for some additional time the parties discussed the terms of the proposed sale and then proceeded to the offices of Clayton Jones, an attorney in Miles City where they requested Mr. Jones to prepare a contract for deed containing the terms of the agreement at which the parties had theretofore arrived. After examining the notes and discussing the matter with the parties, Mr. Jones advised them that he could not prepare a contract for deed of the type they desired that day and that the best he could do was prepare a contract for deed containing the essential provisions of their agreement on a form. This was agreed to by the parties and Mr. Jones did prepare such a form contract for deed which appears in the evidence as plaintiff's Exhibit 8 and this form contract after its preparation was executed by the parties and taken by Rock and Birdwell to Terry, Montana, where it was filed on the same day and the parties then proceeded to the office of the Prairie County Cooperative Grazing District to pay the delinquent rentals.

The parties then returned to Miles City and to the home of Birdwell where Art Rock remained for a couple of days over

the weekend until the final contract was prepared by Mr. Jones.

The final draft of the contract was prepared and executed by the parties hereto on March 21, 1960, in the office of Clayton Jones; Mr. Jones, Mr. and Mrs. Birdwell and Art Rock being present. A short time later in the latter part of March or early part of April, Art Rock consulted with Jim Lucas, Esq., an attorney in Miles City concerning the contract for deed which he had executed and with the assistance of Mr. Lucas and made an offer to the Birdwells to rescind the contract, and which the Birdwells refused.

Thereafter, from 1960 through 1964, Art Rock and Birdwell operated the ranch units in accordance with the provisions of the contract, with Birdwell renting out half of it from time to time and paying taxes and rentals and providing improvements on the premises with the knowledge and occasionally assistance of Art Rock.

There is much testimony in the transcript concerning Art Rock's condition at the time these contracts were entered into and whether or not fraud or undue influence was exercised by the Birdwells in the negotiation and formation of this contract and as to the ownership of the E½ and W½ of section 22 which is primarily involved in this lawsuit.

At sometime prior to the signing of the final draft of the contract, either Mr. Birdwell or Mr. Jones or probably both somehow or another were made aware of the fact that the record title to the E½ of section 22 was in the name of one of Art Rock's brothers, Oliver F. Rock. According to the testimony of Mr. Jones and Mr. Birdwell, Art Rock advised them at that time that he had a deed to such property from his brother Oliver which had not been recorded up to that time. It also appears in the testimony that sometime in August, namely, on or about August 14, 1961, Oliver Rock became aware of the contract between Art Rock and Birdwell, and at that time he retained counsel, namely, Keith Johnson, Esq., of Butte, Mon-

tana, and approached the Birdwells with a view to canceling or rescinding the contract which cancellation or rescission was not effected.

In the testimony at this trial, it appears that up until 1949, Art Rock was the record owner of the E½ of section 22 and the NW¼ of section 26 which joined the E½ of section 22 and in 1949 Art Rock had conveyed the E½ of section 22, together with the NW¼ of section 26 to his brother Oliver during a time when Art Rock was involved in, or about to be involved in a lawsuit with his neighbors, the Hamiltons. Thereafter, in a settlement of the lawsuit with the Hamiltons, the NW¼ of section 26 was transferred to the Hamiltons and in return the Hamiltons transferred to Art Rock the W½ of section 22. Subsequent to this time, namely, in 1952, Oliver Rock deeded the E½ of section 22 and the NW¼ of section 26 back to Art Rock. This deed was never recorded by Art and according to his testimony was, sometime after 1959, destroyed.

As to this unrecorded deed from Oliver to Arthur, both Oliver and Arthur admitted its existence, its delivery and its effect. Art said it had been destroyed. However, a photo copy of the deed was admitted into evidence. It is dated September 2, 1952, signed by Oliver and his wife Lillian. It was exhibited to and copy filed in the Bureau of Land Management by Art to prove his ownership of the entire section for the purpose of having and keeping the government's annual permits.

Art admitted all of this. His explanation was that after repeated demands by the Bureau of Land Management he got the deed, and took it to them to "peacify them."

On or about April 9, 1964, Oliver Rock instituted an action against the defendants, Birdwell, for the purpose of quieting title to the E½ of section 22, which was a portion of the lands conveyed to the Birdwells by Art Rock. This complaint was in the usual quiet title form and claimed an interest in the property adverse to the plaintiff Oliver Rock and requested the

court to declare that the Birdwells had no interest and that title was in Oliver Rock.

Thereafter on or about July 20, 1964, the Birdwells answered the complaint of Oliver Rock and in their answer set forth the Contract for Deed covering the same property executed by Art Rock and by virtue of which they claimed their contract interest in the land subject to the actions.

On or about August 10, 1964, the Birdwells filed a third-party complaint alleging that Art Rock had executed the Contract for Deed to them and requesting that he be required to come in and defend their title and asking for damages from Art Rock should he not do so.

On or about September 9, 1964, Art Rock filed an answer to the third party complaint, in which he alleged among other things that he had no authority to execute the contract with respect to the E½ of section 22, since the title to the same was in his brother Oliver Rock. He also set forth that his only interest in the property was by reason of lease between himself and Oliver Rock and also pleads that a certain deed which had been set forth in the third party complaint from Oliver Rock to Art Rock was given because of the anticipation of a partnership agreement between Oliver Rock and Art Rock which was never consummated. He likewise sets forth that the conduct of the Birdwells in obtaining the Contract for Deed was fraudulent as to him, and does not ask for any affirmative relief in this pleading.

Oliver Rock filed an amended and supplemental complaint in which he repleads his first complaint, the quiet title action, and then goes on to set up the fraud and undue influence of the Birdwells as practiced upon Art Rock and goes on to assert his title in the E½ of section 22, and likewise claims title to the W½ of section 22 by virtue of a conveyance on September 11, 1961, of the W½ of section 22 to him by Art Rock. In the prayer of the amended and supplemental complaint, Oliver Rock requests that his title to said lands, which according to

the pleadings, apparently means all of the lands and leases be quieted as against the Birdwells and that he be granted damages for the value of the grazing from 1960 to 1963 and damages for the loss of use of the ranch premises for the year 1964 and for exemplary damages and costs.

Thereafter, or at the same time, Art Rock filed an amended answer and a counterclaim in which he repleads his original answer to the third party complaint and then proceeds to declare that he is the record owner of the W½ of section 22 even though according to the amended complaint of Oliver Rock and according to the testimony he had transferred the W½ to Oliver Rock on September 11, 1961. He then alleges the fraud and undue influence toward him on the part of the Birdwells in connection with the execution of the Contract for Deed and he likewise claims damages for the use of the lands and leases during the years 1960 through 1963 and his prayer asks that the contracts for deed be annulled and that the title to said lands be quieted in him as against the Birdwells and for compensatory damages.

The foregoing rather complicated description of the situation is made in an effort to preface our discussion. The plaintiff, Oliver Rock, respondent here, asserts that the pleadings sufficiently allege the basis for an attack on the contract on these grounds:

(1) Art Rock's mental inadequacies rendered him incapable of entering into a contract;

(2) Art Rock did not understand the contract, in other words it represented no meeting of the minds and it was not therefore a contract;

(3) Certain terms were ambiguous and without meaning;

(4) Art Rock did not understand; and

(5) Art Rock did not intend to sell the ranch.

The specifications of error are nine in number, and we will set them up as each are discussed or will group them as hereinafter indicated.

The first specification is that Findings I and II are erroneous, and also that Conclusion of Law No. 1 is erroneous.

The Findings are in material part:

"1. That Oliver Rock acquired the E½ of section 22 * * * by deed dated April 27, 1949, and filed for record May 4, 1949 * * *."

"II. That Arthur Rock acquired the W½ of section 22 * * * by deed dated May 29, 1950, and filed for record June 12, 1950 * * *."

Conclusion of Law No. 1 is:

"That on March 18, 1960, the fee land described as section 22 * * * and Federal lands described * * * comprise a ranch unit in which both Arthur Rock and Oliver Rock owned an interest * * *."

Appellant concedes that Findings I and II establish the time and manner in which Art Rock and Oliver Rock obtained record title on the respective dates; but he urges that on March 18, 1960, the date of the Birdwell contract, the title was different.

The evidence was as to March 18, 1960, that Art Rock was the owner of both the E½ of section 22 and the W½ of section 22 in this manner: It is unclear when Art Rock received title to the E½ of section 22 from his father, but he testified that sometime in the late 1930's or in the 1940's his father deeded it to him. In 1949, he, Art, had purchased the NW¼ of section 26 so that at that time Art was the record owner of the E½ of section 22 and the NW¼ of section 26. In 1949 at a time when he was having difficulties with his neighbors named Hamilton, he conveyed all of the land to brother Oliver. At this time Hamiltons owned the W½ of section 22. In a settlement of the Hamilton lawsuit in 1950, a trade was made whereby the Hamiltons deeded the W½ of section 22 to Art, and the NW¼ of section 26 was deeded to Hamilton. At this point then, the W½ was in Art's name, and the E½ was in Oliver's name.

In 1952, as related before, Oliver deeded back to Art the E½

of section 22. On this same unrecorded deed, Oliver purported to deed the W¼ of section 26 to Art likewise.

Now then, the record is clear that Art had legal title to all of section 22. This situation existed on March 18, 1960, when Art made the contract with Birdwells.

■■ A recent case of this court, McReynolds v. McReynolds, 147 Mont. 476, 414 P.2d 531, is somewhat analogous as regards the effect of an executed and delivered deed, even within a family. There we said at page 479 of 147 Mont., page 532 of 414 P.2d:

"A grant of real property is presumed to be intended to pass a fee simple title, unless it appears from the grant that a lesser estate was intended. (R.C.M.1947, § 67-1608). A grant of real property is conclusive against the grantor and everyone claiming under him, except one who in good faith and for consideration acquires a title or lien that is first duly recorded. * * *"

And, further at page 482, 414 P.2d page 534: "Just as the written statements of the defendants were not admissible to vary the terms of the deeds, neither are their oral statements. Where there is nothing ambiguous or uncertain in the terms of a deed it speaks for itself, and parol evidence tending to show a prior or contemporaneous oral agreement or tacit understanding with respect to the terms of the conveyance is inadmissible. Pinsky v. Sloat, 130 Cal.App.2d 579, 279 P.2d 284."

The McReynolds case was between the grantor and grantee of a deed. This case is not, since Art and Oliver Rock are not contesting each other's title. But, the same rules apply. (And see Hjermstad v. Barkuloo, 128 Mont. 88, 270 P.2d 1112.)

Looking further to the instant case. Art and Oliver Rock are brothers. But Oliver is a school teacher living in Idaho. For several years he and brother Art did not contact each other at all. So far as the Federal Government, local governments and the public generally were concerned, Art was the owner by his own proofs.

Thus, here, at the time of the contract in question, Art Rock

was the owner; and it follows that the trial court's Conclusion of Law No. 1 was erroneous, unless it could be based upon transfer subsequent to the contract between Art and the Birdwells. In other words, Oliver Rock has no standing in the case if the contract between Art and Birdwells be valid on any legal theory.

We look then to the contract, and this being an equity case, we "review all questions of fact arising upon the evidence presented in the record * * *." (Section 93-216, R.C.M.1947, and see Bender v. Bender, 144 Mont. 470, 397 P.2d 957, for a most recent discussion of the rule.)

As to the balance of the specifications of error, we shall group them into a general discussion and analysis of facts and legal principles involved.

Respondent's brief sets up the discussion of the validity of the contract in this manner:

"The superior position of Birdwell in his real estate brokerage and mineral dealer business, his knowledge of legal affairs, titles, values of property and his own preparation of the outline of the agreement, arrangement for services of counsel and drafting the contract, etc., as compared with Art Rock's almost illiterate condition, his weak-mindedness, his weakness for drink, his irresponsibility and his incompetence, and the fact that he took no part in drafting or explaining the terms of the contract to Attorney Jones, will appear from the Transcript of Testimony."

On March 19, 1960, and on March 21, 1960, when the formal contract was signed, certain of these matters might have been true. But, nothing was done in a legal way until the filing of the complaint by Oliver on April 17, 1964. As recited before that complaint was a quiet title action. It was not until the Fall of 1964 that an amended complaint was filed that the contract for deed was attacked.

Two legal defenses were made. One, the statute of limitations; and, the other, that of waiver of any right to rescind or

cancel the contract. An additional defense of laches was made, but we shall not discuss it. We reiterate here that we are considering the validity of the contract for deed between Art Rock and Birdwells. We have heretofore held that Oliver Rock had no standing unless the contract be invalid.

One of the briefs herein refers to the legal issues as "mass confusion." We agree, but insofar as Art is concerned his defenses are on grounds of fraud. The species of fraud would seem to include (1) Gross inadequacy of consideration, and the superior position of Birdwell; and (2) Undue influence. That gross inadequacy of consideration in connection with other circumstances may amount to fraud seems clear. (55 Am.Jur., Vendor and Purchaser, § 91.)

R.C.M.1947, §§ 13-302 and 13-303, defines consent and determines that apparent consent is not free when obtained through duress, menace, fraud, undue influence or mistake. Fraud is defined in section 13-307 as actual or constructive and further defined in the following sections. Without belaboring the point we find the record here clear that fraud was charged against Birdwells.

R.C.M.1947, § 93-2607, provides that an action for relief on the ground of fraud or mistake must be brought within two years, and that the action does not accrue until discovery.

In the instant case, granting without deciding, that there was fraud by Birdwells, the action, not being brought for more than two years after discovery by everyone, including Brother Oliver, was barred.

For a further reason here, Art Rock waived any claim he might have had. Within two weeks after the execution of the contract for deed, Art Rock visited with his attorney, Mr. Lucas. In April 1960, after the visit with the attorney, Art joined Birdwell in making a written application to the Bureau of Land Management to fence a portion of the ranch property. In the summer of 1960, Art permitted Birdwell to lease pasture to Askins. In 1961, Art permitted Birdwell to lease pasture to

Young. In the same year he helped Birdwell build fences. In fact, all through 1960, 1961, 1962, 1963, and 1964, up to the filing of suit by brother Oliver, Art worked with Birdwell. He abandoned and relinquished any right he may have had.

But one more matter need be commented upon. We have conceded that an inadequate consideration was paid. However, the district court went so far as to find that a total consideration of only $4,000 was to be paid. Birdwells were buying an undivided one-half interest. The contract provided that Birdwells would pay $12.50 per deeded acre for an undivided one-half interest in 640 acres. Thus, the purchase price of the one-half interest was $8,000 and was acknowledged by both parties.

For the foregoing reasons the judgment is reversed and the matter returned to the district court to enter findings in accordance herewith, insofar as the various rights of the parties are concerned. As to damages accruing to either party, the district court held that the damages, if any, were off set. No serious contention is made on this appeal otherwise, and thus we shall leave that finding undisturbed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and JOHN CONWAY HARRISON concur.