AMERICAN NATIONAL BANK OF RIVER-
TON, WYOMING, Appellant
(Defendant below),

v.

The FIRST NATIONAL BANK OF LAN-
DER, WYOMING, a National Banking As-
sociation, Appellee (Plaintiff below).

The FIRST NATIONAL BANK OF LAN-
DER, WYOMING, a National Banking As-
sociation, Appellant (Plaintiff below),

v.

AMERICAN NATIONAL BANK OF RIVER-
TON, WYOMING, Appellee
(Defendant below).

Nos. 3674, 3675.

Supreme Court of Wyoming.

Nov. 15, 1968.

Donald Spiker, of Spiker & White, Riv-
erton, for American National Bank of Riv-
erton, Wyoming.

John L. Vidakovich, of Law Offices of
W. A. Smith, Joseph B. Meyer, Lander, for
First National Bank of Lander, Wyoming.

Before HARNSBERGER, C. J., and
GRAY, McINTYRE and PARKER, JJ.

Mr. Justice McINTYRE delivered the
opinion of the court.

The First National Bank of Lander,
Wyoming, brought a replevin action
against American National Bank of River-
ton, Wyoming, for recovery of the posses-
sion of a Chevrolet pickup and a two-horse
trailer. Each of the banks claimed a first
mortgage lien on each of the items of
property involved.

On motions for summary judgment, the
district court found defendant-American
National had a perfected security agree-
ment superior to that of plaintiff on the
pickup. It found plaintiff-First National
had a valid first mortgage lien on the trail-
er. Summary judgment was entered in fa-
vor of American National for the pickup

and in favor of First National on the trailer. Both parties have appealed.

Affidavits and interrogatories appearing in the record show that plaintiff-First National made a loan to George E. Fairfield and Viola Fairfield. The lender took a *Security Agreement* from the borrowers and a separate instrument entitled *Financing Statement*. It is clear from the record and admission of the parties that the *Financing Statement* was filed the next day after execution in the county clerk's office. The *Security Agreement* was not so filed or recorded.

Several months after being financed by First National, the borrowers purchased the pickup and the trailer which subsequently became the subject of the replevin action. It is the contention of First National that funds for both purchases were drawn on it, so that it actually advanced the monies with which the purchases were made. It admits, however, that it had no knowledge of the purchase of either vehicle until defendant-American National filed a *Security Agreement* and *Financing Statement* covering both vehicles, approximately a year after plaintiff had taken its notes and security instruments.

American National also caused its lien to be recorded upon the certificate of title for the pickup and on the certificate of title for the trailer. Inasmuch as First National never knew of the purchases and never had the certificates of title, no lien in its favor was ever noted on either certificate of title.

The property mortgaged and pledged as security in the *Security Agreement* of First National was 629 cattle, 1000 tons of hay, and machinery "per Exhibit 'A'." The agreement recited that it was given in consideration of loaning a sum of money not exceeding $160,000, together with "all future advances." Also, this instrument provided:

"* * * to the maximum extent permitted by law, any and all Collateral of like type or kind as that hereinbefore described as Collateral, now owned or hereafter acquired by the Debtor, shall secure all obligations covered by this Security Agreement * * *."

Because of the provisions contained in its *Security Agreement* with respect to future advances and after-acquired property, First National claims a first mortgage lien on the property in dispute, which was purchased by the debtors several months after First National took its lien.

We consider first of all whether First National made a showing of any *actual* notice on the part of American National, with respect to the claim of prior liens by First National. It is noted that plaintiff propounded certain interrogatories for defendant-American to answer, including interrogatory 19 as follows:

"Was the Defendant at the time the above loan was made to the Fairfields cognizant of or have knowledge of the Security Agreement and Financing Statement executed to the Defendant by George E. Fairfield and Viola Fairfield on the fifth day of January, 1966 and filed for record on the sixth day of January, 1966, in the Office of the County Clerk, Fremont County Court House, Lander, Wyoming."

The answer made by defendant to interrogatory 19 was this:

"Yes, with reference to Financing Statement in favor of plaintiff. No detailed knowledge available to us."

We understand this answer to mean American knew of, or was at least charged with knowledge of, all information contained in the *Financing Statement* of First National, and that it had no detailed knowledge beyond that. Perhaps it could be argued that the answer was not complete because it answered yes as to the *Financing Statement* but did not answer yes or no as to the *Security Agreement*.

■ It must be remembered, however, that plaintiff has the burden of proof to show American National knew First National was claiming liens against the vehicles here involved, if plaintiff wishes to

rely on *actual* knowledge. To be entitled to trial, on an issue of *actual* knowledge, it would be incumbent upon plaintiff to demonstrate by receivable facts that a real controversy on such issue exists. Bruce Construction Corporation v. United States for Use of Westinghouse Electric Supply Company, 5 Cir., 242 F.2d 873, 875. See also 3 Barron and Holtzoff, Federal Practice and Procedure, § 1235, p. 141.

Much mention has been made of Cheyenne National Bank v. Citizens Savings Bank, Wyo., 391 P.2d 933, 935. In that case we pointed out there was no contention that Citizens Savings had *actual* knowledge of the lien claimed by Cheyenne National. We said we were therefore concerned only with the question as to whether Citizens National had *constructive* notice by reason of the filing of the Bryan mortgage.

■ In the case now before us, plaintiff has failed to show that evidence of *actual* notice is available. In the absence of such a showing it is not entitled to replevy either vehicle on the theory that American National had actual notice that First National was claiming liens on the vehicles involved.

### The Pickup

As far as the pickup is concerned, the only constructive notice chargeable to American National, when it took its security, was such as was afforded by the prior filing of First National's *Financing Statement*. We have read this instrument with care and find in it no provision concerning future advances and no provision concerning after-acquired property, except for the following:

"If livestock are listed, this Security Agreement shall extend to and include all natural increase thereof and all after-acquired additions, substitutions, replacements, and accretions thereto.

"If crops are listed, all proceeds received therefrom are covered by this instrument."

■ The collateral described in the *Financing Statement* was the same as that described in the *Security Agreement*, i. e., 629 cattle, 1000 tons of hay, and machinery "per Exhibit 'A'." Thus, both livestock and crops were listed, but no other after-acquired property was shown to be covered. Any subsequent mortgagee, such as American National, had a right to assume the lien of First National covered only what was described and provided for in the *Financing Statement* on file with the county clerk, as far as constructive notice concerning a motor vehicle is concerned.

■ The commercial code, at § 34-9-302(4), W.S.1957, 167 Cum.Supp., states two steps are required for perfection of a security interest in a motor vehicle required to be licensed. One of the required steps is that a financing statement or security agreement must be filed in the office of the county clerk; the other requirement is that a notation of the security interest must be endorsed on the certificate of title to the motor vehicle.

Inasmuch as the financing statement filed by First National did not disclose that First National had or claimed a security interest in the after-acquired pickup of the Fairfields, its filing was ineffective as against subsequent mortgagees, as far as the pickup is concerned. The second requirement of having a notation of the security interest endorsed on the certificate of title to the pickup was admittedly not met.

Therefore, having failed to meet statutory requirements for the perfection of a security interest in the pickup motor vehicle, First National cannot claim a priority of lien in the pickup as against American National. The summary judgment of the district court with respect to the pickup was proper and is affirmed.

### The Trailer

The summary judgment of the district court, insofar as it pertains to the two-horse trailer, is affirmed by an equally divided court.