Coleen Ann Nash DORFMAN, Appellant,

v.

Louis DORFMAN, Appellee.

No. 7975.

Court of Civil Appeals of Texas, Texarkana.

June 9, 1970.

Rehearing Denied July 21, 1970.

J. Manuel Hoppenstein, Morton Rudberg, William H. Cooper, R. G. Carter, Carter, Gallagher, Jones & Magee, Dallas, for appellant.

Henry W. Strasburger, Strasburger, Price, Kelton, Martin & Unis, Edward Kliewer, Jr., Kliewer & Hood, Dallas, for appellee.

CHADICK, Chief Justice.

This is an appeal from a judgment in a divorce suit filed by Mrs. Coleen Dorfman against her husband, Louis Dorfman. Judgment in the case granted Mrs. Dorfman a divorce and custody of the couple's children and ordered a division of the estate of the parties.

The trial judge set aside to the wife as her separate property realty of the value of $306,000.00, and to the husband as his separate property inherited minerals and some other properties of comparatively small value, the total value of the husband's separate estate is not shown. The value of assets the trial court found to have been acquired as the result of the husband's employment of his time, talents and enterprise, including those that resulted from the comingling of the husband's separate funds with community funds and assets, was divided between the parties.

The trial court's findings of fact and judgment, as construed in the appellant's brief, places the total value of $1,134,173.79 upon the community estate of the parties. In the trial court judgment the wife was awarded assets of the value of $277,085.40, and the husband the remainder, that is, specified property items having a value of $857,088.39. The principle ground urged for reversal is that the division is manifestly unfair and so disproportionate as to constitute an abuse of judicial discretion. It is also urged that the sufficiency and weight of the evidence does not support the value fixed for certain specified assets, and that there was error in failing to declare certain property to be community in character.

This court must ultimately determine from the entire record whether or not the trial court abused its discretion by making a division that is manifestly unjust and unfair. Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21 (1923). Appellant's points of error 6 through 13, if sustained, would nullify in part the value basis upon which the trial court founded a division of the estate of the parties, and perhaps, when considered with other elements of the judgment, compel a reversal. The attack undertakes to show the trial court placed an erroneous value upon property known in the record as the Post Oak Park project on the grounds that the evidence supporting the judgment is insufficient and, al-

ternatively, contrary to its great weight and preponderance. Post Oak Park is a real estate development project in the Houston, Texas area, that consists of apartment buildings, the Honeywell and Armco office buildings, a town house complex, and 27 acres of undeveloped land. Dorfman Development Company owns a 50% partnership interest in the project, Bay Petroleum Company owns the other half. The court found Dorfman Development Company's interest to have a value of $326,000.00.

Counsel for Mrs. Coleen Dorfman tendered the testimony of an appraiser that the market value of the undeveloped land in the project was $6.00 per square foot, and placed the value of the Honeywell building at $3,239,000.00, the Armco building at $8,325,000.00, and the town houses at $4,500,000.00, the gross value thus being $22,956,100.00. On this basis Dorfman Development Company's interest would exceed $6,000,000.00 in value. Also offered in evidence was the project's partnership balance sheet of May 31, 1968, reflecting a partnership equity of $893,330.82. Testimony with respect to the partnership equity was offered tending to show that $300,000.00 remained unexpended out of a $600,000.00 line of credit represented by a $600,000.00 note to Bay Petroleum Company. This note was included in the total indebtedness of the project as found by the court. In a letter in evidence dated January 22, 1968, Louis Dorfman stated to a banker that he turned down $4.50 per square foot for the project's undeveloped acreage, and that the net value of the Honeywell building was $600,000.00, the Armco building $900,000.00, and a conservative estimate of the liquidated value of all property was $3,500,000.00.

Besides questioning the qualification and credibility of appellant's expert witness, appellee undertook to explain facts and circumstances unfavorable to him. He testified that he had been offered $4.50 per square foot for a one-half acre tract to be used as a service station; that no offer of $4.50 per square foot had ever been made

for all undeveloped acreage. He said his letter to his banker was in response to a request that he write an "optimistic as possible" letter, because Dorfman Development Company's financial position was "in danger". He also testified that Dorfman Development Company owed $3,877,000.00 "of the joint debt of the Post Oak Park project, besides a $1,000,000.00 demand note to the Houston National Bank and a note to Bay Petroleum Company for $600,000.00". In reply to a question, Dorfman summed up in this manner: "Oh, the net indebtedness. In other words, the gross is $5,803,000.00, and then the indebtedness attributable to Dorfman Development Company is $5,477,000.00, leaving a net equity of $326,000.00."

■ The trial judge had the intricate task of ascertaining from the proof offered the true value of this recently developed urban property. The court was confronted with bringing to order and reducing to viable facts the sometimes contradictory and usually ebullient opinions of expert property appraisers, apparent or paper profits evidenced by accounting procedures, and the financial maneuverings of land development promotors. Preserving the true essence of the evidence and condensing it to manageable proportions can seldom be satisfactorily done. The evidence bearing upon the value of Post Oak Park project has been outlined in the immediately preceding paragraphs. From this condensed version it is to be seen that there is adequate evidence, if believed, to support the trial court's value findings. On the alternative point, it may be observed that the facts and circumstances offered by the appellant pertaining to value are not of such strong and inherent probative effect that it may be said that the court's judgment is contrary to the great weight and preponderance of the evidence. The court concluded, in harmony with Louis Dorfman's testimony, that the gross value of Dorfman Development Company's interest in Post Oak Park was $5,803,000.00 and indebtedness attributable to the project was $5,477,000.00, thus determining the difference of

$326,000.00 as current value of the company's interest. It is elementary that the trial judge, as fact finder, has the prerogative of determining the credibility of witnesses and the weight to be given their testimony. Due regard for the trial court's function requires the points of error previously mentioned be overruled.

Review of the action of the trial court in refusing to hold that all assets of Dorfman Development Company, as well as leasehold interests known in the record as the Park Place lease and the Richardson Savings & Loan lease, were community property is required by appellant's 14th, 15th, 16th and 17th points of error. Louis Dorfman's total capital contribution to Dorfman Development Company was $3,476.00 of admittedly separate funds. The trial court found the corporation to be Dorfman's alter ego. Excepting of course the original $3,476.00 of capital stock, the court for the purpose of a division treated all assets and liabilities of the development corporation as community assets and liabilities. Appellant insists that treating these assets as community property is something less than an adjudication that such assets are community property. Appellant makes no effort to show the technical distinction between treating property as community and adjudicating it to be community, if a distinction can be made, but argues that because none of the assets of the corporation were awarded Mrs. Coleen Dorfman the court's findings were merely "lip service" to the principles of community property law. From that springboard it is argued that the trial judge "felt constrained either consciously or subconsciously" to minimize the value and award the assets of Dorfman Development Company to Louis Dorfman. The same argument is made with respect to the Park Place and Richardson Savings and Loan leases.

 A court in decreeing a divorce is empowered and required to order a division of the estate of parties in a manner that is just and right. In making this division both separate and community property is considered and due regard given in the division to the rights of both parties and the best interests of their children, if any. The division may be accomplished by any legal device or equitable means, such as partition that does not compel a divestiture of a party's title to separate real estate, the impress of a lien, or the creation of a trust. Vernon's Ann.Tex.Rev.Civ.Stat.Ann. art. 4638 (1960) ;* Hailey v. Hailey, 160 Tex. 372, 331 S.W.2d 299 (1960); Ex parte Scott, 133 Tex. 1, 123 S.W.2d 306 (1939); Hedtke v. Hedtke, 112 Tex. 404, 248 S.W. 21 (1923); Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002 (1950). It is not immediately perceptible how failure to declare the mentioned items community property has caused a manifestly unfair award when treating such items as community property for division purposes. Any error in failing to find and characterize these items as community property does not appear for that reason to have harmed the appellant. The points are overruled. Tex.R.Civ.P. 434 (1967).

 Was the division ordered by the trial judge manifestly unfair and so disproportionate as to constitute an abuse of discretion? Appellant's points 1 through 5 require an answer to the question. As a beginning point it may be observed that there is the policy rule, often called a presumption, that proceedings in the trial court are to be considered regular and in compliance with the law, until the contrary appears. 1 McCormick & Ray, Texas Law of Evidence § 98. On its face, as the appellant construes it, the judgment shows a division that allots the wife community assets valued at $277,085.40 and the husband the remainder of the estate valued at $857,088.39. It thus appears the award is substantially disproportionate but presumably correct. In Mozisek v. Mozisek, 365

* Repealed effective January 1, 1970 by Texas Family Code. Judgment herein preceded repeal of the Article.

S.W.2d 669 (Tex.Civ.App.1963, err. dism.) it is said:

"It is the duty of the Court of Civil Appeals to indulge every reasonable presumption in favor of a proper exercise of discretion by the trial court in dividing the properties of the parties, Ingham v. Ingham, Tex.Civ.App., 240 S.W.2d 409."

Appellant's burden in this appeal is to show by the record that there is no rational basis for the division made in the trial court, that is to say, that the division is manifestly so disproportionate as to constitute an abuse of judicial discretion. Hooper v. Hooper, 403 S.W.2d 215 (Tex.Civ.App., Amarillo, 1966, writ dism'd); and see Hedtke v. Hedtke, supra, and the following for a discussion of principles leading to this conclusion: Roberson v. Roberson, 420 S.W.2d 495 (Tex.Civ.App., Houston 14th, 1967, wr. ref'd, N.R.E.); Middlesworth v. Middlesworth, 380 S.W.2d 790 (Tex.Civ. App., Fort Worth 1964, no writ); Hayes v. Hayes, 378 S.W.2d 375 (Tex.Civ.App., Corpus Christi 1964, writ dism'd); Clark v. Clark, 362 S.W.2d 655 (Tex.Civ.App., Houston 1st, 1962, no writ); Duncan v. Duncan, 374 S.W.2d 800 (Tex.Civ.App., Eastland 1964, no writ); Pickitt v. Pickitt, 401 S.W.2d 846 (Tex.Civ.App., Tyler, 1966, no writ); Berdoll v. Berdoll, 398 S.W.2d 397 (Tex.Civ.App., Austin 1966, no writ).

■ Perhaps the rights of the children, one of the elements of a proper division specified by Article 4638, should be looked to first. The appellant Coleen Dorfman was granted a divorce and custody of the couple's two male children, ages 8 and 6. Louis Dorfman was ordered to pay $350.00 per month for the support of both children, to keep in force hospital and medical insurance for their benefit, and to pay one-half of any such cost in excess of insurance coverage. In addition, he was ordered to pay one-half of private school expense incurred before each child reached eighteen years of age. Neither party complains of this order, and it appears adequate for the protection of the best interests of the children. Nothing in the provision for support appears to justify a widely disproportionate division of community assets.

■ The great bulk of the community estate, though there are important exceptions, may be described as equities, that is, the value of property or an enterprise over and above the indebtedness against it. The equities arise in most instances out of investments and speculations in urban acreage, construction of business and residential housing and enterprises connected or associated therewith. All such investments and promotions have been made since the 1960 marriage. The short history of these operations make them appear successful. Their speculative nature, however, make it necessary that each one be profitable over a long period of time for the equity values to have real meaning. The value of these equities generally are values based upon a going business operation.

■ In making the decision required of this court—abuse or not of discretion—some insight and understanding may be gained by reflecting upon the nature of the property making up the community estate and the reasonable alternatives available to the trial judge in dividing it. Plausibly, the interests of all parties, as well as public policy, is served by a division, fair and equitable as to portions, that tended to preserve the property's value in the hands of its recipient. Precautions tending to preserve such values would fall well within the standard set by statute that a division be right and just.

Division could have been effected and value established with certainty by sale of the community property, payment of indebtedness and an equal division made of the overage. No one urged this course, and it does not appear to have been considered. Besides numerous other difficulties that would have been encountered, it is common

knowledge that property disposed of at forced sale rarely brings its highest value; this probably accounts for a lack of consideration of this approach. The community assets and liabilities might have been divided equally, each party, taking an undivided one-half interest. Such plan would have left each co-tenant with equal authority in the management of the community real estate and business projects. Divided authority and management by already hostile co-tenants would not commend such plan. A third alternative was to divide the property in such way that one of the divorced parties would have the means and incentive and be obliged to carry on the comunity business projects and liquidate community indebtedness thereby assuring, so far as it lay within the power of the court to do so, the other party the certain enjoyment of a portion of the community assets. This seems to be the plan the court chose. It is obvious that there could be many variations on the mentioned plans, and of course there were other alternatives, such as trusteeship, etc.

■ Does the record show the plan adopted did not produce a division that is just and right? First, the court avoided liquidation of the business ventures supporting the equities. Leaving operation of business projects in Louis Dorfman's hands, because of his knowledge and experience in the business, appears reasonable and preferable to placing such operations in Mrs. Dorfman's relatively inexperienced management. Ordering Louis Dorfman to pay all community indebtedness was forceful assurance that the value of the assets awarded Mrs. Dorfman would be realized. This course has pitfalls, for it must be recognized courts may not prejudice the right of creditors to subject non-exempt community property to the payment of community debts. Hughes v. Hughes, 259 S.W. 180 (Tex.Civ.App., Amarillo, 1924, err. dism'd); Hubbard v. Hubbard, 38 S.W. 388 (Tex. Civ.App., Austin 1896, no writ); Broadway Drug Store of Galveston v. Trowbridge, 435 S.W.2d 268 (Tex.Civ.App., Houston, 1968). But the desired result was probably achievable because the order made Louis Dorfman liable generally for the indebtedness and thereby subjected his non-exempt property, separate and community, to payment of community debts as between him and Mrs. Dorfman. The record shows direct community indebtedness of $194,945.-00, and contingent indebtedness in excess of $4,700,000.00. The latter figure well may be overstated by approximately a half million dollars, as appellant points out, but even so, contingent liability in excess of four million dollars remains. Continued successful operation would tend to preserve Louis Dorfman's separate estate and the equity values constituting the greater part of the community estate. As recipient of the larger part of the community equities, Louis Dorfman was given the means and the situation gives incentive for successful operation.

■ In making a division it is needless to say, the current values of equities in a going business are an important consideration and must be given weight, but their character should be borne in mind if justice is to be done Likewise, it is not to be forgotten that edifices grounded on such values frequently collapse under the pressure of adverse economic conditions. Inference may be drawn from evidence in the record that Dorfman Development Company's financial position was insecure. Also relevant, is the fact that community property other than equities was divided so evenhandedly that no complaint is registered. Money was divided evenly, each took an automobile, etc.

■ When all that is discussed above and all that the record contains is considered, the hard fact remains that the trial court, on the basis of values it determined, allotted the husband roughly $3.00 out of every $4.00 of the value of the community estate; but impartiality requires

the further observation that Mrs. Dorfman's opportunity to realize is superior to Louis Dorfman's. She may compel him to exhaust all of his non-exempt resources in the preservation of her equities. Other judges and other courts might in good conscience have rendered a different judgment. But when this record is considered, can it be said there is no rational basis for the judgment under review? Or to state the same question differently, is it shown that the partition was not just and right? Did the trial judge abuse his discretion? When regard is taken of the extremely broad discretion the statute vests in the trial judge, this court is not able to answer that error is shown by the record, that the division made was not just and right. Such conclusion is reinforced by but not dependent upon a construction of art. 4638 that the trial judge was not restricted in making a just and right partition to a consideration only of the community assets of the parties in the particular next discussed. The trial court was not required to ignore and remain oblivious to the fact that Mrs. Dorfman had no separate property at the time of marriage and that property valued at $306,000.00, given her by her husband, was set apart to her as her separate property. See Fitts v. Fitts, 14 Tex. 443 (1855). Can it be said that it is just and right that this important fact should have no consideration when the marriage is dissolved? This court holds it is a factor to be considered in determining what is just and right in this case.

Serious jurisdictional and procedural issues have been raised by the appellee. Affirmance supplies substantially the same relief that favorable actions on appellee's motions would carry. For the purpose of the record, all of appellee's motions are dismissed. Appellant's motion for rehearing is overruled and this opinion is substituted for the earlier one dated April 21, 1970, which is withdrawn. The judgment of the trial court is affirmed.