Chrysanthe SANNERUD,
Appellant (Defendant),

Edward N. Coleman, Janice E. Coleman,
Thomas A. Sawyer, and Loeva M.
Sawyer, (Defendants),

v.

FIRST NATIONAL BANK OF
SHERIDAN, Wyoming,
Appellee (Plaintiff).

No. 85–55.

Supreme Court of Wyoming.

Nov. 6, 1985.

James T. Anest of Marken & Anest, Casper, for appellant.

Tom C. Toner of Redle, Yonkee & Arney, Sheridan, for appellee.

Before THOMAS, C.J., ROSE,* ROONEY, and BROWN, JJ., and RAPER, J., Retired.

RAPER, Justice, Retired.

The First National Bank of Sheridan, Wyoming (appellee) filed a complaint to foreclose a mortgage on real property owned by the debtors, Edward and Janice Coleman, and to foreclose its security interest in personal property also owned by the Colemans. Chrysanthe Sannerud (appellant) was joined in the action. The district court granted the appellee's motion for summary judgment, determined that appellee's mortgage and security agreement were first and valid liens on the property superior to the claim of appellant, and ordered the property sold to satisfy the debt owed by the Colemans to appellee. Debtors Colemans and others joined permitted a default to be entered against them. The appellant, who claims to have a security interest in the personal property, has appealed the summary judgment.

The appellant visualizes the issues to be: (1) Did material issues of fact remain which precluded summary judgment; and (2) was appellee's security interest superior to that of appellant. The appellee frames its concept of the issues to be: (1) Is appellant's security agreement which identifies only an intangible interest ("equity" in a contract for deed) sufficient to perfect a security interest in tangible personal property which is subject to appellee's security agreement; and (2) does that description give sufficient notice to appellee that appellant claims a security interest in a class of collateral not described in appellant's security agreement.

We will affirm.

In October 1982, appellant filed with the county clerk for Sheridan County a security agreement and financing statement entered into by debtors Colemans and appellant, as the secured party, on June 1, 1982. The collateral to secure appellant was described in the instrument as:

"$167,500.00 equity in Energy Inn, Sav-Mor Mini Mart and Sav-Mor Service Station on Contract for Deed between Thomas A. and Loeva M. Sawyer and Edward M. and Janice E. Coleman dated June 1, 1982 in escrow at First National Bank of Sheridan, 2 N. Main St., Sheridan, Wyoming 82801. All proceeds from sale of house [and] acreage in Casper, Wyo. owned by Edward [and] Janice Coleman will be paid to escrow at Hilltop Nat'l Ba[nk]."[1]

The Sawyers were sellers and the Colemans were buyers. They are also the defaulting parties to the district court action and not parties to this appeal.

The indebtedness from the Colemans to appellant arose from loans and brokerage fees due appellant from the Colemans. Appellant, as a broker, participated in the sale of the Energy Inn Motel, Sav-Mor Mini Mart and Sav-Mor Service Station. The Colemans agreed, in the standard purchase offer, acceptance and receipt executed by the Colemans and the Sawyers, to pay the

---

* This case was heard and decided prior to the retirement of Justice Rose on October 31, 1985.

1. We are not concerned with the Casper property and the proceeds from its sale; they are not at issue in this appeal.

Sawyers $1,082,500 for the properties which is the balance after payment of $10,-000 as a deposit, $70,000 loaned to the Colemans by the appellant, and a credit of $87,500 which the Colemans agreed to pay as broker's fees to the broker "on terms." Apparently appellant as broker also advanced the $10,000 deposit in that the total of the deposit, loan and brokerage fees equal the amount of the Colemans' note to appellant in the sum of $167,500, the amount of indebtedness set out in the security agreement given by the Colemans to appellant.

While the "Contract for Deed" referred to in the security instrument does not appear in the record, its terms are set out in the escrow instructions to appellee bank dated June 1, 1982, executed by the Colemans and the Sawyers, to which appellant's security agreement and financing statement refers. It was there described as an "Agreement for Warranty Deed and Contract for Sale of the Energy Inn Motel, Sav-Mor Mini Mart and Sav-Mor Service Station Properties."

The terms of the agreement and contract as in the escrow instructions recited set out the rate of payment beginning July 1, 1982, along with other provisions not here involved. A relevant provision, however, is that at the date of such agreement and contract, the "subject property is currently mortgaged to the First National Bank of Sheridan, Wyoming, and the terms of said Promissory Note and Mortgage are subject to renegotiation on September 23, 1983." Payments provided by the agreement and contract were, according to the escrow instructions, to be paid to appellee bank and first applied to the payment of the mortgage "presently on the subject property."

On June 8, 1983, the Colemans executed a promissory note to appellee in the sum of $500,000 secured by a real property mortgage and security interest in the personal property of the three businesses sold as a unit of the same date. The security agreement and financing statement had attached to it a detailed and itemized list of the inventory, supplies, machinery, equipment, furniture and fixtures covered. The real estate mortgage was recorded with the county clerk on June 20, 1983. The instrument covering personalty was in the combined form of a security agreement and financing statement and filed with the county clerk on June 22, 1983.

As of December 3, 1984, the Colemans owed the appellee $499,337.13 with interest at 12 percent from September 16, 1983, on the foregoing described secured debts. There are other secured obligations of the Colemans to the appellee claimed in the district court action, but they are not in issue here, so we are not concerned with them.

Appellant, in her "Affidavit in Opposition to Motion for Summary Judgment," claims that the security agreement and financing statement to her, filed on October 25, 1982, was executed by the Colemans and appellant to secure payment of the Colemans' note in the principal sum of $167,500 and affected only the personalty of the Energy Inn Motel, Sav-Mor Mini Mart and Sav-Mor Service Station. Appellant claims no security interest in the real property subject to appellee's mortgage. She further asserts that the appellee was as a result of the 1982 security agreement filing under an obligation to inquire of appellant what the instrument was intended to cover by way of collateral. Appellant argues that if such inquiry had been made, appellant would have informed appellee that the parties intended the security agreement to cover the personal property included in appellee's security agreement, and the court should hear evidence to that effect rather than granting summary judgment.

The district court in its judgment found that the appellee's security interest in the personalty described in the security agreement and financing statement was as a matter of law a first and valid lien superior to the lien and claims of appellant. We agree.

Appellant argues as an issue that the summary judgment was precipitous in that there were genuine issues of material fact left to be decided as required by Rule

56, W.R.C.P. It is urged by her that Exhibit A was missing from the instrument entitled "Security Agreement and Financing Statement" attached to the affidavit offered by appellee in support of its motion for summary judgment. This position is frivolous in that there is attached an inventory of personal property of the motel, mart, and service station. The same inventory is attached to the same instrument as an exhibit to the complaint filed in the case and served on appellant. It is true that the inventory attached is marked "Exhibit 'B' " rather than Exhibit A, but there is only one exhibit referred to in and forming a part of the security agreement and financing statement. W.S. 34–21–951(e) anticipates small, inconsequential inaccuracies: "A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." We construe the mislabeling of the attached exhibit as "B" rather than "A" to be minor and not misleading.

Appellant's answer which she filed pro se has attached the security agreement and financing statement given by the Colemans to her upon which she relies for her claim. Such agreement and statement refers to the contract between the Colemans and Sawyers dated June 1, 1982, in escrow at appellee bank. She also includes as an exhibit to her answer a copy of the escrow instructions. Those escrow instructions refer to personal property being part of the transaction.

Aside from those flags of verification of undisputed facts, we are not convinced that there was even a need to have such an inventory attached. A generic description of personal property is sufficient for a security agreement if the description is adequate to make possible identification by inspection. *Eggeman v. Western National Bank,* Wyo., 596 P.2d 318 (1979). Appellee did more than required in its filing by using a combined security agreement and financing statement. Such a practice usually avoids the necessity of inquiry as to just what is covered.

■ The real issue in this appeal is whether appellant had a valid claim and lien against the inventory of personal property of the motel, mart, and service station. Her security was a "$167,500.00 equity in Energy Inn, Sav-Mor Mini Mart and Sav-Mor Service Station" given her by the Colemans who at the time had only an agreement for warranty deed and contract for sale of those properties. The question is whether that security of appellant has a priority over the security of appellee, which, according to its regularly perfected security agreements, were real estate and:

"All inventory, supplies, machinery, equipment, furniture and fixtures including but not limited to items as described in 'Exhibit A' attached, located at 508 E. 5th Street, Sheridan, Wyoming, or wherever located."

Appellant claims a security interest in personal property but nowhere in her security instrument is personal property mentioned. She is secured by, and her collateral is, the "equity" of the Colemans in the motel, mart, and service station complex. That is all they could give her. The Colemans had only a contract by which the sellers agreed to sell to them on the terms stated. A debt payable by the Colemans to the appellee was created by the contract against both the real estate and personalty of the enterprise and continued immediately following the anticipated renegotiation of the appellee's mortgage upon the property. Renegotiation was to take place as of September 23, 1983, and did in fact shortly follow with a new mortgage on the real estate and security agreement on the personal property (goods) executed on June 8, 1983, by the Colemans.

An "equity" in property or an enterprise is the value over and above the liens and charges against it. *Stewart v. Gurley,* 745 F.2d 1194, 1195 (9th Cir.1984); *Fitzgerald v. Davis,* 729 F.2d 306, 308 (4th Cir.1984); *Dorfman v. Dorfman,* Tex.Civ.App., 457 S.W.2d 417, 422 (1970); *Comstock v. Fiorella,* 260 Cal.App.2d 262, 67 Cal.Rptr. 104, 107 (1968); *Crowder v. State, Department*

*of Social Security,* 42 Wash.2d 782, 259 P.2d 387, 390 (1953).

An "equity" is not inventory, supplies, machinery, equipment, furniture, and fixtures. "[E]quity" is an intangible, incapable of identification until the liens and charges against the Energy Inn Motel, Sav-Mor Mini Mart, and Sav-Mor Service Station have been satisfied. The liens and charges of appellee against such properties have not yet been satisfied. Until the business is liquidated, appellant has no claim on any particular collateral.

For the purposes of our discussion, there are two types of personal property—tangible and intangible—subject to the secured transactions provisions of the Wyoming Uniform Commercial Code:

> " 'Goods' includes all things which are movable at the time the security interest attaches or which are fixtures * * * but does not include money, documents, instruments, accounts, chattel paper, general intangibles, contract rights and other things in action. * * * " W.S.34–21–905(a)(vi).[2]

Goods are further categorized in pertinent part by W.S. 34–21–909 to include " '[e]quipment' if * * * used or bought for use primarily in business * * * or * * * are not included in the definitions of inventory," paragraph (ii), and " '[i]nventory' if they are held by a person who holds them for sale * * * or materials used or consumed in a business," paragraph (iv).

Intangibles are in pertinent part explained by the code:

> " * * * 'Contract right' means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper. 'General intangibles' means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments. * * * " W.S. 34–21–906.

Since under such provisions and definitions of the Wyoming Uniform Commercial Code appellant's collateral can only be an intangible interest in property, and the appellee's collateral is tangible, appellant's collateral is not the same property described in appellee's security agreement and financing statement, as appellant claims it is. This distinction as controlling is illustrated by *Matter of Katz,* 563 F.2d 766 (5th Cir.1977). Paraphrasing and adopting the holding of Matter of Katz to the circumstances we have here, a subsequent potential secured party who looked at the financing statement and agreement could reasonably have concluded that the appellant was financing the intangible equity of the Colemans, and the tangible personal property of the Colemans was unencumbered.

In Wyoming, the rule is in accord with the holding of Matter of Katz. In *American National Bank of Riverton, Wyoming v. First National Bank of Lander, Wyoming,* Wyo., 446 P.2d 968 (1968), this Court held that where there was no provision in the perfected security statement or agreement taken by the First National Bank for after-acquired property except as to livestock and crops, the American National Bank had a right to assume that it did not include an after-acquired pickup.

This is entirely a question of law only requiring a construction of appellant's security agreement and financing statement and a construction of appellee's security agreement and financing statement. Construction of an unambiguous agreement is done by the court as a matter of law. *Tate v. Mountain States Telephone and Telegraph Company,* Wyo., 647 P.2d 58 (1982). Summary judgment is proper where the language of an agreement is plain and unequivocal; the language in such case is controlling and construction of its provisions is for the court as a matter of law. *Kuehne v. Samedan Oil Corporation,* Wyo., 626 P.2d 1035 (1981). The existence of such documents is undisputed as

---

**2.** The instruments which we are concerned with were signed prior to amendments of the Wyoming Uniform Commercial Code effective July 1, 1983; any amendments do not affect this case.

is the fact that both were perfected by filing with the county clerk. W.S. 34–21–931. No other facts are necessary to a resolution of priority of one over the other. The interests of the appellant and appellee are not conflicting. Appellee has an interest in goods. Appellant has an interest in equity; in other words, at the most, in any surplus remaining after appellee's debt and security interest have been satisfied from the sale of the real estate and goods.

■■■ Appellant contends that appellee was under some obligation to inquire of appellant as to what the parties intended to cover. That may not be necessary where the appellant has filed the entire agreement creating the security interest. The statutory requirement for perfecting a security interest is that only a financing statement need be filed as notice. This is referred to as "notice filing." The notice itself indicates merely that the party who has filed may have a security interest in the collateral described. Further inquiry under those circumstances may be required to determine the state of affairs. However, such may not be necessary where the entire security agreement between the secured party and debtor is filed. Official comment to § 9–402, Uniform Commercial Code (W.S. 34–21–951). It will be recalled from the facts we have laid out that appellant did file with the county clerk a combination security agreement and financing statement. Appellee could see the state of affairs from the agreement. Appellant cannot stretch the agreement to include other property. The intention of the parties to an agreement is determined by the words of their agreement if clear and unambiguous. *Kost v. First National Bank of Greybull,* Wyo., 684 P.2d 819 (1984). The agreement of appellant with the Colemans is clear and unambiguous.

Appellant's description of intangible collateral as "equity" was very simply insufficient to give notice of a security interest in particular goods.

Affirmed.