Elmer CORDOVA and Dorothy
Cordova, husband and wife,
Appellants (Defendants),

v.

Antonia GOSAR, Appellee (Plaintiff).

No. 85–271.

Supreme Court of Wyoming.

May 20, 1986.

Robert A. Magee, Cheyenne, for appellants.

John W. James of James & James, Rock Springs, for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

By summary judgment the trial court, for contended mutual mistake, invalidated a 12-year-old deed description which would terminate the interest of an 80-year-old widow in her home after the grantee served a notice to quit. Grantee, unsuccessful in the trial court, appeals and is now again denied by this court's affirmance.

In June, 1973, Antonia Gosar, as seller, entered into a sales agreement with Elmer Cordova and Dorothy Cordova for the sale of real estate in Rock Springs, Wyoming. Described in the agreement was Lot 13, *Block 2*, Pilot Butte Addition (417 Tisdel), City of Rock Springs, and by separate paragraph a portion of *Block 7* (810 Pilot Butte Avenue) of the same subdivision. The payment price was $12,000, payable after down payment on monthly installments to an escrow agent which also held a document escrow including the unrecorded executed deed. The payment schedule carried a time period of approximately ten years. At the expiration of that period, 1983, the escrow was closed and legal documents were delivered to the buyer, who then recorded the deed which documented the conveyance of two separate parcels of land and two noncontiguous houses.

Cordova occupied one parcel after initial purchase, and Gosar continued to occupy her home on the other parcel, without notable event until October, 1984, when a notice to quit was served on Gosar by Cordova for failure "to pay rent since November 7, 1983, when we became legal owners,"

which apparently is the day that the escrow payments were completed and the deed was delivered to the buyer by the escrow holder.

Gosar, of Yugoslavic extraction, was aged 80 years, and had lived 54 years continuously on the Tisdel Street property. She first came to know that the original sales documents included both properties, one of which was her home, by receipt of the notice to quit, as she had continued to pay taxes and provide insurance for the property to current time.

Reacting to the notice to quit, Mrs. Gosar filed suit, claiming adverse possession, mutual mistake of fact and failure of consideration, and requested a temporary restraining order and injunction to retain possession during the litigation. Cordova answered in essence by general denial, and did not include any affirmative defenses or counterclaim in the pleading. A temporary restraining order and interim injunction was granted by the trial judge.

The simplistic resolution of this appeal which could have been afforded after a trial is denied by the district court's grant of summary judgment; consequently more detailed factual and pleading review is mandated.

Following entry of the temporary restraining order, counsel for Cordova, on October 29, 1984, moved for change of judge, which motion was denied by order entered October 30, 1984. Rule 40.1(b), W.R.C.P., the Wyoming peremptory judicial disqualification rule affording disqualification opportunity as of right, had been eliminated in 1982, and then reinstituted effective October 31, 1984, *one day after the denial order was entered.*

A request for admission was served by Gosar and answered by Cordova, with the parties pursuing other discovery. The case then came, in July, 1985, from filing date of October, 1984, to a motion for summary judgment by Gosar. It is from the affidavits spawned by that motion that this resolution is now required.

Gosar averred ownership, tax payment, fire insurance coverage, execution of the 1973 agreement, continuous possession, and:

"17. Any claims of the said Defendants, and each of them, are without right whatever, that the said Defendants have no right, title, claim, lien, estate, interest or equity whatever in, to or upon said real property and premises or any part thereof, which property is described in Paragraph 3 hereof, namely the said Lot 13, Block 2, of the Pilot Butte Addition to the City of Rock Springs, Sweetwater County, Wyoming.

\*     \*     \*     \*     \*     \*

"19. For a continuous period of more than ten years last past, Plaintiff and her predecessors in title have, under claim of ownership, been in open, notorious, exclusive, hostile, adverse, lawful, peaceable and actual possession of, and have owned in fee simple, all of the above described real property and premises described in Paragraph 3 above, during all of which time they have asserted such ownership against the above named and mentioned Defendants, and against all the world.

\*     \*     \*     \*     \*     \*

"21. In signing Exhibits 'C' and 'D', which are attached hereto, being the sales agreement and the warranty deed, respectively, it was not the intent of either the seller in that contract, the Plaintiff herein, nor the intent of the buyers in that contract, the Defendants herein, to sell and transfer to the Defendants the above described real property and premises more particularly described in Paragraph 3 above."

Jere Ryckman, a practicing attorney in Green River, stated by affidavit as to the Tisdel property:

"2. That during the latter part of August, 1984, or the beginning of September, 1984, Dorothy Cordova sought legal advice from affiant in connection with a sales agreement dated June 1, 1973, between Dorothy Cordova and her hus-

band, Elmer Cordova, as buyers, and Antonia Gosar, as seller.

"3. At the time Dorothy Cordova spoke with affiant regarding said sales contract for real property, she indicated her concern to be that Robert L. Bath would some how attempt to retake the property she had purchased under the contract, located at 810 Pilot Butte Avenue, which was her residence and which is more particularly described as follows:

"[Description.]

"and that a second parcel of property had been mistakenly included in the said contract of sale and deed.

"4. Dorothy Cordova was further concerned that she would be assessed real property taxes by the County of Sweetwater for two parcels of property located in Rock Springs, Wyoming, when she only owned one, which was her residence above mentioned, located at 810 Pilot Butte Avenue.

"5. In order to protect her residence and to negate the possibility of paying taxes on property she did not own, which from my information seemed to be Antonia Gosar's home located at 417 Tisdel, Rock Springs, Wyoming, Dorothy Cordova authorized me to contact attorney John James, who she thought was representing Antonia Gosar, and advise Mr. James of the above circumstances set forth in Paragraphs 2, 3 and 4, and take whatever steps were necessary in order to clear up the mistake in the above mentioned contract and the deed prepared pursuant thereto so that Dorothy Cordova's home would be protected and Mrs. Gosar's property would again be in her name alone. It was my understanding from speaking with Dorothy Cordova that the contract mistakenly included Mrs. Gosar's home located at 417 Tisdel and so did the deed. Dorothy Cordova authorized me to advise Mr. James that she and her husband, Elmer Cordova, would sign a deed conveying Mrs. Gosar's home, located at 417 Tisdel, back to her, which property is more specifically described as:

"[Description.]

"in order to remedy the mistaken inclusion of this property in the said contract of sale and deed of June 1, 1973.

"6. Pursuant to the authorization of Dorothy Cordova to contact John James and advise him of the above, affiant contacted John James a couple of days prior to September 18, 1984, by telephone and advised him of the above. Pursuant thereto Mr. James prepared the deed conveying the property at 417 Tisdel from Dorothy Cordova and Elmer Cordova to Antonia Gosar, along with a transmittal letter dated 9/18/84, which is attached hereto and made part hereof as Exhibit 'A.' Upon receiving the deed attached as Exhibit 'A,' affiant advised Dorothy Cordova of such receipt and advised that it was ready to be executed by her and her husband, Elmer Cordova. After receiving this information, Dorothy and Elmer Cordova refused to execute said deed, and obtained other legal counsel in regard to this matter."

Robert L. Bath, the drafting attorney for the original agreement related in his affidavit the sales events, and stated that it was not intended to include both homes, that the purchase price was insufficient for both, and that inclusion of the Gosar house in the description was a mistake.

Further included in support of the motion for summary judgment was an affidavit of the deputy assessor of the county, involving a telephone call with Mrs. Cordova discussing the description mistake and the erroneous inclusion of two parcels instead of only the one which had been occupied by purchaser. Gosar filed an extensive brief in support of the motion for summary judgment. Cordova filed a brief in opposition, contending that the issues of fact should render summary judgment inappropriate. Attached to the brief were affidavits of Elmer Cordova and Dorothy Cordova.

Elmer Cordova, by responsive affidavit, denied facts stated by Gosar, Bath and Ryckman, stated that both properties were properly included, and:

"4. That in fact, for many months before June, 1973, Antonia Gosar had offered to sell the residences at 417 Tisdel *and* 810 Pilot Butte to me.

"5. That during that period, Antonia Gosar said she would sell both residences to him 'cheap' because she said she 'wanted to go back to the old country.'

"6. That Antonia Gosar, prior to the sale, said she wanted to stay in the residence at 417 Tisdale [sic] until she went 'back to the old country' and would pay the taxes and insurance on that residence until then.

\*      \*      \*      \*      \*      \*

"10. That several months after the agreement was signed, Antonia Gosar remarked to Affiant that he might remodel the 417 Tisdel residence after she had gone to the old country, for himself.

"11. That Antonia Gosar resided at 417 Tisdel with his consent, it having been agreed that so long as she paid the taxes and kept insurance, she would not pay any rent.

\*      \*      \*      \*      \*      \*

"13. Antonia Gosar knew what she was doing, and told Affiant her reasons for what she wanted to do, and fully intended to sell both residences at the time of the agreement.

\*      \*      \*      \*      \*      \*

"14. That in 1980, Antonia Gosar pointed out the cupboards in the 417 Tisdel residence, commenting on their condition, and suggesting that Affiant could replace them after she had gone 'to the old country.'

"15. That in view of the agreement Affiant had made with Antonia Gosar about her staying in the 417 Tisdel residence until she returned to Europe and as long as she paid the taxes and kept the insurance on that property, Affiant did not know whether he could ask her to pay rent and he was unsure of how long he had to wait for Antonia Gosar to leave the premises."

Dorothy Cordova also averred by three affidavits facts generally contrary to the affidavits of Bath, the deputy assessor and Ryckman.[1]

The case then came in August to a further motion to disqualify the judge by present counsel for Cordova, supported by affidavits of prior counsel and Dorothy Cordova, contending for bias and prejudice of the presiding judge. The motion was denied by an order wherein the court

"\* \* \* finds that he is not biased and prejudiced and is capable of giving the Defendants a fair trial."

A ten-page opinion letter was entered, speaking to the determination in favor of Gosar, with a resulting summary-judgment order entered, from which this appeal now comes.

We must decide whether the summary judgment in favor of Gosar can be sus-

---

1. Dorothy Cordova's third affidavit stated:

"2. That I have read the affidavit of Jere Ryckman, Attorney, filed in this case.

"3. That I contacted Mr. Ryckman, without my husband's knowledge or consent, to get his opinion as to the ownership of the properties at 417 Tisdel and 810 Pilot Butte.

"4. That I told Mr. Ryckman that my husband and I were having marital difficulties and I wanted to know about the property because my husband was going to file for divorce.

"5. That I asked Mr. Ryckman to keep this information strictly confidential.

"6. That at no time since then have I waived the attorney-client privilege.

"7. That at no time did I authorize Mr. Ryckman to contact Mr. James or anyone else to offer any kind of deed on the 417 Tisdel property.

"8. That Mr. Ryckman asked me whether I wanted to put Mrs. Gosar out of her residence, that I had every right to do so, and asked me if I wanted him to do it right then.

"9. That I told him I did not know what to do then because of my marital problems and that I would have to wait and see what my husband would do.

"10. That Mrs. Gosar called me to tell me that her son, Tony, was with Mr. Ryckman, and that she, Mrs. Gosar, was afraid of Tony, and that Tony had all her papers.

"11. That on the following day, I asked Mr. Ryckman whether he had talked to Tony Gosar, and he denied doing so at first, then stated that Mr. James had sent Tony there."

tained, or whether the case should be remanded for a trial on the issues developed by the conflicting affidavits.

Approximately one-fourth of all appeals maturing to opinions since October 31, 1985 in this court, excluding criminal and worker's compensation cases, have involved summary judgment or sustained motions to dismiss.[2] The appeals have advanced from a plethora to an avalanche. This case presents a particularly unusual appellate challenge.

The trial court postulated his position in determination of summary judgment:

2. *Gates v. Richardson,* Wyo., 719 P.2d 193 (1986): negligent infliction of emotional damage, order affirming motion to dismiss reversed, Cardine, J., Rooney, J., Retired partially dissenting; *Jones v. Chevron U.S.A., Inc.,* Wyo., 718 P.2d 890 (1986): oil-field accident, summary judgment against plaintiff reversed, Cardine, J., Urbigkit, J. and Brown, J. dissenting; *Ward v. First Interstate Bank of Riverton,* Wyo., 718 P.2d 886 (1986): letter of credit, summary judgment in favor of the Bank affirmed, Brown, J.; *Durdahl v. Bank of Casper,* Wyo., 718 P.2d 23 (1986): promissory note, security document conflict, summary judgment reversed, Urbigkit, J.; *Wyoming Department of Revenue and Taxation-Excise Tax Division v. First Wyoming Bank, N.A.-Kemmerer,* Wyo., 718 P.2d 31 (1986): sales tax statute interpretation, summary judgment affirmed, Brown, J.; *Toltec Watershed Improvement District v. Johnson,* Wyo., 717 P.2d 808 (1986): abuse of process and intentional interference with contract; summary judgment for defendant granted; affirmed, Brown, J., Urbigkit, J. dissenting; *Greub v. Frith,* Wyo., 717 P.2d 323 (1986): city employees' employment, affirmed, Brown, J.; *Koontz v. Town of South Superior,* Wyo., 716 P.2d 358 (1986): road easement, summary judgment for Town, reversed, Cardine, J., Rooney, J. dissenting; *Ogle v. Caterpillar Tractor Co.,* Wyo., 716 P.2d 334 (1986): summary judgment granted in favor of manufacturer and distributor of industrial equipment from which injury resulted, summary judgment affirmed as to warranty and reversed as to negligence, Cardine, J., Brown, J. concurring in part and dissenting in part; *Nation v. Nation,* Wyo., 715 P.2d 198 (1986): grandparent visitation controversy, summary judgment granted for visitation, reversed on procedural grounds, Urbigkit, J., Macy, J. dissenting; *Travelers Insurance Company v. Palmer,* Wyo., 714 P.2d 765 (1986): suit on subrogation account, complaint dismissed with prejudice for failure to attend pretrial conference, remanded for entry of order dismissing without prejudice, Urbigkit, J.; *Midway Oil Corporation v. Guess,* Wyo., 714 P.2d 339 (1986): default judgment in money damage suit, reversed on procedural basis, Urbigkit, J., Rooney, J. specially concurring; *City of Casper v. International Association of Firefighters,* Wyo., 713 P.2d 1187 (1986): litigation involving firefighters' contract, summary judgment in favor of the union, reversed, Rooney, J; *Farrell v. Hursh Agency, Inc.,* Wyo., 713 P.2d 1174 (1986): default judgment entered for failure to comply with discovery orders, affirmed, Rose, J.; *Torrey v. Twiford,* Wyo., 713 P.2d 1160 (1986): summary judgment on malicious prosecution, reversed on procedural basis, Urbigkit, J., Rooney, J. dissenting; *Hamel v. American Continental Corporation,* Wyo., 713 P.2d 1152 (1986): lien foreclosure, summary judgment for defendant, affirmed, Raper, J., Retired; *Conway v. Guernsey Cable TV,* Wyo., 713 P.2d 786 (1986): negligence in cable television installation, summary judgment for defendant, procedural issue, no affidavit by plaintiff, affirmed, Macy, J; *Fiedler v. Steger,* Wyo., 713 P.2d 773 (1986): medical malpractice action, summary judgment for doctor, affirmed, Urbigkit, J; *Noonan v. Texaco, Inc.,* Wyo., 713 P.2d 160 (1986): industrial accident on drill rig with suit against oil company, summary judgment for oil company, affirmed, Brown, J., Thomas, C.J. concurring, Rose, J. dissenting; *Shanor v. A-Pac Ltd.,* Wyo., 711 P.2d 420 (1986): summary judgment on lease obligation and attorney's fees, reversed and remanded for trial as to attorney's fees only, Guthrie, J., Retired; *Colorado National Bank v. Miles,* Wyo., 711 P.2d 390 (1985): summary judgment on mortgage foreclosure, affirmed, Brown, J; *Davis v. City of Casper,* Wyo., 710 P.2d 827 (1985): action against municipality, motion to dismiss for failure to file within period of limitations, affirmed, Cardine, J; *Metzger v. Kalke,* Wyo., 709 P.2d 414 (1985): medical malpractice, summary judgment granted in favor of the physician, reversed, Rose, J., Rooney, J. dissenting; *Garner v. Hickman,* Wyo., 709 P.2d 407 (1985): suit by purchaser of modular home against dealer and bank, summary judgment granted on defendant's motion in favor of the bank, affirmed, Brown, J; *Seafirst Mortgage Corp. v. Specialty Concrete Construction,* Wyo., 708 P.2d 1245 (1985): mechanics lien foreclosure, summary judgment in favor of contractor against mortgagee, reversed, Rooney, J.; *Skurdal v. State,* Wyo., 708 P.2d 1241 (1985): employee suit against the State of Wyoming to receive worker's compensation benefits in coin, dismissal affirmed, Rose, J; *Sannerud v. First National Bank of Sheridan,* Wyo., 708 P.2d 1236, (1985): bank suit for foreclosure, summary judgment in favor of the bank against third-party claimants, affirmed, Raper, J., Retired; *Hochhalter v. Great Western Enterprises, Inc.,* Wyo., 708 P.2d 666 (1985): default judgment, failure to answer, affirmed, Rose, J; *Duffy v. Brown,* Wyo., 708 P.2d 433 (1985): employment contract, fraudulent and negligent misrepresenta-

"Elmer Cordova has filed herein an affidavit alleging a parol agreement was entered into between him and Gosar to the effect that she would be permitted to occupy the Tisdel property until she returned to Yugoslavia as long as she paid the taxes and kept the place insured. This is clearly inconsistent with the terms of the written Agreement, as noted above, with respect to the taxes and insurance. Inasmuch as the subject matter of his affidavit 'is not only dealt with in the written contract but is fully covered thereby, parol evidence with respect to a collateral matter (i.e. taxes and insurance) it is not admissible.'

\* \* \* \* \* \*

"I have examined the file and read the briefs and the affidavits and feel that the Defendants would be unable to refute the testimony and evidence of the Plaintiff and also that Plaintiff has made out a prima facie case that could well entitle her to a directed verdict if uncontroverted at a trial. I might add that I do not believe there are any *genuine issues of material* fact necessitating a trial. Furthermore, this is not a jury matter, but a trial before the Court. If I were to hold here that the motion be denied and that a trial be had, I would be confronted by the same testimony as is set forth in the affidavits, and being so confronted feel I would be compelled to rule in favor of the Plaintiff or, had it been a jury trial, directed a verdict for Plaintiff."

The first factual issue of this case is whether Gosar intended to sell one or two parcels of land, with the consequent question of a scrivener's mistake in draftsmanship. The second is the existence of any coordinate oral agreement.

We are led in syllogistic analysis to the following factual review:

1. Contested contention of the erroneous inclusion of property by description in a sales transaction;

2. Clear factual circumstances supporting the analysis of a mistake;

3. Buyers' response and answer to the factual circumstances alleging the exist-

tion, summary judgment for defendant, af-

ence of an oral agreement which sustains and describes the facts which did occur in order to rebut mutual mistake.

In support of this analysis, we have the comment in the Cordova brief:

" \* \* \* The court erred in not reading Elmer Cordova's affidavit as a response to such an assertion, but more importantly as explaining a subsequent course of action."

This explanation is

"That Antonia Gosar, prior to the sale, said she wanted to stay in the residence at 417 Tisdale [sic] until she went 'back to the old country,' and would pay the taxes and insurance on that residence until then."

And:

"That Antonia Gosar resided at 417 Tisdel with his consent, it having been agreed that so long as she paid the taxes and kept insurance, she would not pay any rent."

We are then faced with the "explanation" in consonance of the fact that Cordova did not wait until Gosar "went back to the old country" to demand possession as he first initiated this possession action by notice to quit in 1984.

In a reply brief, Cordova stated:

"Applying a reasonable-man test to the actions of Elmer Cordova, it is possible to conclude that the price he paid was reasonable in view of what could amount to a life estate in Antonia Gosar, although her possession of the Tisdel property would only be until she returned to the old country, and that after so many years he began to wonder whether she would ever return \* \* \*."

In oral argument, as an explanation of the institution of the dispossessory action, it was indicated by counsel that Cordova got tired of waiting for Gosar to return to Yugoslavia.

### Issues

Cordova states the issues as:

firmed, Rooney, J.

I. "The District Court erred in concluding that mutual mistake had been established on appellee's motion for summary judgment and in its handling of parol and extrinsic evidence in reaching that conclusion."

II. "The court below erred in granting summary judgment."

III. "The court erred in denying the motion for change of judge."

The appellee stated the issues differently:

"A. Whether the District Court erred in granting summary judgment to the plaintiff.

(1) Whether self-serving inferential affidavits filed by the Appellants in the trial court, which contradict the course of dealing and course of performance of both Appellants and Appellee, and which clearly contradict the independent direct and circumstantial evidence and inferences therefrom are adequate to raise an issue of material fact.

"B. Whether Rule 40.1(b), Wyoming Rules of Civil Procedure, permitted preemptory challenge of a judge on October 30, 1984.

"C. Whether it was reversible error for the trial court to deny appellants' motion to disqualify him from sitting on the case due to bias and prejudice constituting antagonism and opposition to one of the appellants, Dorothy Cordova."

This opinion will be rearranged for discussion by the following topics:

I. Recusal and judicial disqualification.

II. Privilege.

III. Sufficiency of the evidence on mutual mistake.

IV. Summary judgment.

V. Parol evidence.

I

*Recusal and Judicial Disqualification*

Appellant strongly contends that the trial judge should have been recused.

■ Clearly, the mandatory-removal provision of the Wyoming Rules of Civil Procedure was not in effect at the time the motion was either filed or determined. We are not now called to decide what would have occurred if counsel had waited to file until after the reinstated rule went into effect or if the court had delayed its order for two more days. For a similar reason we will not now determine hypothetically whether the status of the case at the time the motion was filed was of a nature so that the present Rule 40.1(b)(1), W.R.C.P., Cum.Supp.1985, would have required peremptory removal as challenged.[3]

In review of the disqualification for cause section, it is apparent that the relevant provision is (E): "is biased or prejudiced against the party or his counsel." We are bothered by the time sequence

---

3. Rule 40.1(b)(1) and (2), W.R.C.P., Cum.Supp. 1985, reads:

"(b) *Change of judge.*

"(1) Peremptory disqualification.—A district judge may be peremptorily disqualified from acting in a case by the filing of a motion requesting that he be so disqualified. The motion shall be filed by a plaintiff at the time the complaint is filed, designating the judge to be disqualified. The motion shall be filed by a defendant at or before the time the first responsive pleading is filed by him or within thirty (30) days after service of the complaint on him, whichever first occurs. One made a party to an action subsequent to the filing of the first responsive pleading by a defendant cannot peremptorily disqualify a judge. In any matter, a party may exercise the peremptory disqualification only one (1) time and against only one (1) judge.

"Disqualification for Cause.—Whenever the grounds for such motion become known, any party may move for a change of district judge on the ground that the presiding judge (A) has been engaged as counsel in the action prior to his election or appointment as judge, (B) is interested in the action, (C) is related by consanguinity to a party, (D) is a material witness in the action, or (E) is biased or prejudiced against the party or his counsel. The motion shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such grounds. Prior to a hearing on the motion any party may file counteraffidavits. The presiding judge shall rule on the motion and if he grants the same shall immediately call in another district judge to try the action."

upon which the supporting affidavit for removal is based, wherein it indicates that the event occurred on October 23, 1984, between counsel and the court, as recited in an affidavit dated June 24, 1985, and then first filed by motion to disqualify the judge in a briefing order regarding the plaintiff's motion for summary judgment entered on July 22, 1985, or seven months later at a time after the motion for summary judgment had been filed. Earlier attention to the claimed bias would have been more persuasive when compared with the later effort to change judges when an undesired result may have been anticipated.

We will hold that, as a concern of the exercise of discretion by the sitting judge, no sufficient evidence was afforded upon which the motion to disqualify would have to be sustained. *Kobos v. Sugden,* Wyo., 694 P.2d 110 (1985); *Cline v. Sawyer,* Wyo., 600 P.2d 725 (1979). It is also noted that the argument submitted in appellant's brief was not supported by the "cogent authority" required under our rules of appellate practice. Rule 5.01, W.R.A.P.; *Clouser v. Spaniol Ford,* Wyo., 522 P.2d 1360 (1974). The record does not reflect a basic unfairness in the judicial process denominating inappropriate bias for disqualification for cause under the Wyoming rule.

## II

### Privilege

Another issue concerns this court, although not discussed by counsel as a basis for appeal or by brief, involving the affidavit of Jere Ryckman, an attorney for Dorothy Cordova. May it suffice to serve as a warning that affidavits of this kind should not casually reappear in trial records in the future unless a proper privilege hearing is held to determine that the privilege did not exist or has been waived. In this case, the text of the affidavit at least preliminarily satisfies the waiver of privilege concern by virtue of statements that the direction given to the attorney was to communicate to the attorney of the opposing side, and consequently the affidavit relates only to what was directed and done.

"(a) The following persons shall not testify in certain respects:

(i) An attorney or a physician concerning a communication made to him by his client or patient in that relation, or his advice to his client or patient. The attorney or physician may testify by express consent of the client or patient, and if the client or patient voluntarily testifies the attorney or physician may be compelled to testify on the same subject; * * *." Section 1–12–101, W.S.1977.

See *Berggren v. Berggren,* 77 Wyo. 438, 317 P.2d 1101 (1957), and Rule 501, W.R.E.

Additionally, the affidavit was answered by Mrs. Cordova by her own affidavit, and no motion to strike or to suppress was presented so that a question could be raised requiring judicial resolution. *Conway v. Guernsey Cable TV,* Wyo., 713 P.2d 786 (1986).

## III

### Sufficiency of Evidence or Mutual Mistake

Factually established without conflict, is that Gosar continued to occupy the Tisdel property as owner. Cordova, responding to claims for mutual mistake, now attests that such occupancy was permissive only until Gosar, having lived there for now 54 years, would return to the old country. Cordova's patience then became exhausted, since Mrs. Gosar not only continued to live but continued to live in Rock Springs and not in Yugoslavia, from where she had come not less than 54 years earlier.

We take some comfort in the comment of the Court of Appeals in *Lundgren v. Freeman,* 307 F.2d 104, 115 (9th Cir.1962), a case involving a mutual-mistake question:

" * * * [T]he finding of mutual mistake can be fairly said to be derived not solely from application of legal standards, but from the trial judge's experience with human affairs."

Factually, the evidence addressing mutual mistake was not only substan-

tial, but persuasive if not overwhelming. A review of the documents cannot lead one to conclude that Antonia Gosar intended to sell her residence of then over 40 years at the time that she entered into the contract to sell the second piece of property which was then being rented from her by Cordova. Parol evidence is available to prove mutual mistake of fact in deed description. *Neeley v. Kelsch,* Utah, 600 P.2d 979 (1979). The parol-evidence rule will be discussed generally in a later section of this opinion.

Standing at this stage of case resolution, if unanswered by Cordova, Gosar was certainly entitled to succeed in the litigation. *Harden v. Gregory Motors,* Wyo., 697 P.2d 283 (1985); *Shepard v. Top Hat Land & Cattle Co.,* Wyo., 560 P.2d 730 (1977); *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159 (1949).

" 'However, if the movant makes out a prima facie case that would entitle him to a directed verdict if uncontroverted at trial, summary judgment will be granted unless the party opposing the motion offers some competent evidence that could be presented at trial showing that there is a genuine issue as to a material fact. One commentator explains this process as follows: "the burden of producing evidence is shifted to the party opposing the motion," * * * ' 10 Wright and Miller, Federal Practice and Procedure, § 2727, pp. 536–537 (1973)." *Wood v. Trenchard,* Wyo., 550 P.2d 490, 492 (1976).

## IV

### *Summary Judgment*

This case is difficult by resolution of summary-judgment concepts, and consequently more extended review will be pursued to accommodate perceived justice and yet avoid what otherwise might appear as a result-determined concept anomaly.

Evaluation of the last 150 Wyoming cases (15 years) course of summary-judgment decisions demonstrates that summary judgment is *a,* if not *the,* principal case disposition process in Wyoming at this time and with proportionately increasing frequency. Since an order denying summary judgment is not appealable and consequently usually only motions granting are appealed, the frequency of at least initial use may approximate half the civil nonagency litigation at this time.

In a particular effort to make some sense in consistency, and afford a justified basis for decision in this case, the course and sequence of summary judgment will be analyzed.

■ The stage analysis of a summary-judgment case would normally involve the following:

1. Legal sufficiency of the complaint.
2. Procedural sufficiency of the motion for summary judgment and attached affidavits and deposition material.[4]
3. Substantive sufficiency of the affidavits to initially support the motion.
4. Procedural sufficiency of responsive affidavits.
5. Substantive legal issue disposition.
6. Substantive sufficiency of responsive affidavits.

The next stage, if achieved, would be motion denial and trial disposition.

A highly contributory factor in the complexity and variegated results is discerned from the failure of counsel and court to analyze the stage in a particular case where the contested decision is required. Undoubtedly, also, it is the stage six decisions that are the most complex, varied, and discontinuous.

---

**4.** Obviously not only affidavits are used to support or resist summary judgment. Affidavits for the purpose of delineation in this discussion will also include any other factual material available to the court for any ruling on the motion, which might include depositions, interrogatories, admissions, noticed facts, or stipulations. The word "affidavit" is used only because it is the most prevalent and serves as a generic designation for factual evidence made a part of the record.

" * * * Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.' " *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

"Summary judgment is an extreme and treacherous remedy, not to be entered unless movant has established its right to judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any set of discernible circumstances [citation]. Summary judgment is notoriously inappropriate for the determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles [citation]." *Croxen v. United States Chemical Corporation of Wisconsin*, 558 F.Supp. 6, 7 (D.C.N.D. 1982).

" * * * To determine the propriety of a summary judgment, we must examine the record in the light most favorable to the party against whom the summary judgment was entered and give to that party the benefit of all inferences which properly can be drawn from the available evidence. *Rompf v. John Q. Hammons Hotels, Inc.*, [Wyo., 685 P.2d 25 (1984) ]. If we find that an inquiry into the facts was necessary for the proper application of the law, we must overturn the summary judgment. *Kimbley v. City of Green River*, Wyo., 642 P.2d 443, 446 (1982)." *Greaser v. Williams*, Wyo., 703 P.2d 327, 332 (1985).

Applying, then, the issue of resolution to the claim of Mrs. Gosar to eliminate the contended mutual-mistake-of-fact deed which encumbered her home, in order to determine whether, in the fact of conflicting affidavits, summary judgment should have been granted, we will consider each stage serially.

*Stage One:* insufficiency of the original complaint (statute of frauds, statute of limitations, malicious prosecution, failure to state a claim), cf. *Toltec Watershed Improvement District v. Johnston*, Wyo., 717 P.2d 808 (1986). *Davis v. City of Casper*, Wyo., 710 P.2d 827 (1985); *Venson Ford v. Madia*, Wyo., 480 P.2d 101 (1971); *Hamel v. American Continental Corporation*, Wyo., 713 P.2d 1152 (1986). Under present pleading strictures, the Gosar complaint is obviously sufficient.

*Stage Two:* procedural sufficiency of the movant affidavits. Timely filed and obviously in compliance with the requirements of Rule 56, W.R.C.P.; not premised on hearsay, they were based on knowledge, and signed and sworn to in the required fashion. The proceeding for hearing was properly noticed and held in accord with Rule 56. *Torrey v. Twiford*, Wyo., 713 P.2d 1160 (1986); *Fiedler v. Steger*, Wyo., 713 P.2d 773 (1986); *Hickey v. Burnett*, Wyo., 707 P.2d 741 (1985); *Kimbley v. City of Green River*, Wyo., 642 P.2d 443 (1982).

*Stage Three:* sufficiency of the movant affidavits. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *F.S. Bowen Electric Co. v. J.D. Hedin Construction Co.*, 114 A.D.C. 361, 316 F.2d 362 (D.C.Cir.1963); *Garner v. Hickman*, Wyo., 709 P.2d 407 (1985); *Hinkle v. Siltamaki*, Wyo., 361 P.2d 37 (1961). The affidavits and documentary material were substantially embodied with factual matters of admissible evidence, defined in proper terms to address mutual mistake. A proper evidentiary basis for the intial burden for summary judgment was addressed by facts admissible in evidence. *Riggs v. British Commonwealth Corp.*, 459 F.2d 449 (10th Cir.1972).

A difference obviously exists as to the evidentiary burden of movant to produce evidence sufficient if unanswered to determine the case, as contrasted with the respondent's evidentiary burden, which will be addressed in a discussion of stage six. This is sometimes defined as the difference between the burden of the evidence and the burden of the contention. *National Industries, Inc. v. Republic National Life Ins. Co.*, 677 F.2d 1258 (9th Cir.1982); *Doff v. Brunswick Corporation*, 372 F.2d 801 (9th Cir.1966), cert. denied 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967). At this stage, we find sufficient evidence properly submitted

to conclude that a prima facie case of mutual mistake had been established, and, consequently, appellant's argument No. 1 is not well taken. *Conway v. Guernsey Cable TV,* supra.

*Stage Four:* procedural sufficiency of responsive affidavits. These affidavits were timely filed, properly served, signed, and stated facts based on personal knowledge. On this basis, unless other resolution is derived by consideration of stages five and six inquiries, it would be necessary for the motion for summary judgment to be denied. *Board of County Commissioners of Fremont County v. Memorial Hospital of Natrona County,* Wyo., 682 P.2d 334 (1984); *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981).

*Stage Five:* legal issue disposition. Resolution in many cases is accommodated at this time by a determination that the issue between the parties is not factual in nature, but rather involves a contested issue of law which consequently will decide the case. This stage resolution involves interpretation of unambiguous contracts, suits on rationally uncontested promissory notes, and a variant kind of circumstance where the facts are not in dispute but the legal principles are otherwise at issue. *Ogle v. Caterpillar Tractor,* Wyo., 716 P.2d 334 (1986); *City of Casper v. International Association of Firefighters,* Wyo., 713 P.2d 1187 (1986); *Duffy v. Brown,* Wyo., 708 P.2d 433 (1985); *Sannerud v. First National Bank of Sheridan,* Wyo., 708 P.2d 1236 (1985). We find no dispositive legal issue. The question is credibility and factual dispute. Consequently, the remaining determination can only be made as a stage six resolution by determining the substantive sufficiency of the responsive affidavits.

*Stage Six:* dozens of Wyoming cases, hundreds of federal cases, and thousands of cases from other states discern general principles or advance interesting statements for summary judgment grant or denial at the stage six decision. Proper understanding and suitable analysis for this kind of case requires confinement to the issue now remaining as to the sufficiency of the responsive affidavit or if the issues of fact should be reserved for trial in order to differentiate between legal rule disposition and desired result justification.

" * * * When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. [Citations.] In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'* Fed.Rule Civ.Proc. 56(e) (emphasis added)." *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corporation,* — U.S. —, —, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Clearly in this case, if the decision of the trial court granting summary judgment to Mrs. Gosar is to be affirmed, it becomes necessary for this court to deny the efficacy of the Cordova affidavits as a stage six decision.

■ Evidentiary rules relating to the responsive affidavit include the following:

(a) affidavit rejected as *hearsay, conclusory,* or *nonsubstantive.*

(b) affidavit rejected as not affording fact conflict on a *material issue.*

(c) no evidentiary basis in the affidavit to create an actual *fact conflict.*

(d) facts stated are *not admissible* as trial evidence.

We cannot find that the facts stated in the affidavit in this case are not inadmissible hearsay or conclusory, and consequently the affidavit cannot be disregarded or rejected on that basis. *Cook Ford Sales, Inc. v. Benson,* Wyo., 392 P.2d 307 (1964).

■ The issue created as an explanation for the Gosar deed by the Cordova affidavit as an agreement to lease and retain possession, is obviously material, and resolution on this basis is not justified. The factual conflict raised is material. *Fiedler v. Steger,* supra.

Thirdly, is a real issue created? Reference to the rule itself is useful. Rule 56(e),

W.R.C.P., requiring "his response, by affidavits or as otherwise provided in this rule" must set forth specific facts showing that there is a genuine issue for trial.

It is in this definition of what is the genuine issue for trial that the major case conflict and the imposing difference of the legal scholars are attended.[5]

The frustration in analysis in like fashion led the Kansas Supreme Court to state: " * * * However, care will be taken to stay close to the provisions of the statute itself which are quite clear as to procedure and standards to be applied in passing on such motions. An attempt to apply and follow the multitude of cases considering the federal or similar state rules may cause a court to be governed more by aphorisms announced in the opinions than by the unambiguous provisions of the statute." *Secrist v. Turley,* 196 Kan. 572, 412 P.2d 976, 979 (1966).

Extended analysis of cases by time and court system tends to suggest that there sometimes exists a result-oriented case-by-case dispository tendency, without either the trial bench or the appellate tribunal clearly understanding the issue of an evidentiary insufficiency to justify granting of the motion as a stage six decision (sufficiency of the responsive affidavits to demonstrate a genuine issue).[6]

---

**5.** Clearly, as determinable not only from practical observation but by factual review of the cases, the definitional answer by the Wyoming Supreme Court and the Federal rule particularly utilized by the Tenth Circuit may not be consistent in result.

**6.** *Greaser v. Williams,* supra: if find inquiry into the facts was necessary for the proper application of the law, summary judgment is improper; credibility of witness is issue of fact; *O'Donnell v. City of Casper,* Wyo., 696 P.2d 1278 (1985): drastic remedy; movant has heavy burden; look at record from viewpoint most favorable to respondent and give him all favorable inferences; no issue of material fact involved and not inquire into facts to clarify application of law; *Hyatt v. Big Horn School District No. 4,* Wyo., 636 P.2d 525 (1981): competent evidence admissible at trial showing a genuine issue of material fact; *Weaver v. Blue Cross-Blue Shield,* Wyo., 609 P.2d 984 (1980): reasonable minds might differ; *Wells v. Jeep Corporation,* Wyo., 532 P.2d 595 (1975): conclusions and categorical assertions of ultimate facts not sufficient; *Maxted v. Pacific Car & Foundry Co.,* Wyo., 527 P.2d 832 (1974): mere assertions insufficient; cannot rely on conclusions; not test judge with "burden of clairvoyance which is doubtful that the prophetic powers of Nostradamus could meet"; *Clouser v. Spaniol Ford,* supra: pierce the formal allegations and reach the merits—not establish factual situation but determine if any genuine issue exists as to facts; *Shoni Uranium Corp. v. Federal-Radorock Gas Hills Partners,* Wyo., 407 P.2d 710 (1965): both parties moving for summary judgment does not dispel factual issue if it exists; *Western Standard Uranium Co. v. Thurston,* Wyo., 355 P.2d 377 (1960): not expect to rely on cross-examination at trial to create factual issue; only raise issue, not decide; *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962): inferences in the light most favorable—no magical talisman—not make findings at the appellate level; *National Industries, Inc. v. Republic National Life Ins. Co.,* 677 F.2d 1258 (9th Cir.1982): all permissible inferences, but not speculation or surmise; *Fireman's Insurance Company of Newark v. DuFresne,* 676 F.2d 965 (3d Cir.1982): not rely on bare assertions, conclusory allegations or suspicion; *Ruhs v. Pacific Power & Light,* 671 F.2d 1268 (10th Cir.1982): most favorable light and denied if differing inferences from conflicting evidence; *Ness v. Marshall,* 660 F.2d 517 (3d Cir.1981): not rely on vague accusations, conclusory allegations or suspicions but determine issue to exist; not determine facts and not resolve genuine issues of credibility; *Dolence v. Flynn,* 628 F.2d 1280 (10th Cir.1980): claim not frivolous; make a rational argument on the facts or law in support of his claim; trial not solely on affidavits; *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076 (8th Cir.1980): extreme and treacherous remedy, not to be entered unless established with such clarity to leave no room for controversy and movant not entitled to recover under any discernable circumstance; *Madison v. Deseret Livestock,* 574 F.2d 1027 (10th Cir.1978): beyond a reasonable doubt; to be denied if different inferences possible from conflicting affidavits; *Exnicious v. United States,* 563 F.2d 418 (10th Cir.1977): light most favorable to respondent with factual inference most favorable to existence of issue as demonstrated beyond a reasonable doubt; *National Aviation Underwriters v. Altus Flying Service, Inc.,* 555 F.2d 778 (10th Cir.1977): credibility and demeanor evidence is real evidence; denied if not demonstrated that there is absence of issue beyond a reasonable doubt; *Kern v. Tri-State Insurance Co.,* 386 F.2d 754 (8th Cir. 1967): not hearsay; admissible facts required; reject pure speculation without substantial evidence; *Union Insurance Society of Canton, Limited v. William Gluckin & Co.,* 353 F.2d 946 (2d Cir.1965): support a finding that reasonable men could not differ as to intent; *Jacobson v. Maryland Casualty Co.,* 336 F.2d 72 (8th Cir.

The Tenth Circuit Court of Appeals has said, as is also confirmed by other federal courts:

"Summary judgment must be denied if a genuine issue of material fact is presented to the trial court. *Exnicious v. United States,* 563 F.2d 418, 423 (10th Cir. 1977). In making this determination, the evidence must be viewed in the light most favorable to the party opposing the motion. *National Aviation Underwriters v. Altus Flying Service, Inc.,* 555 F.2d 778, 784 (10th Cir.1977). Thus, summary judgment should be denied if differing inferences can be drawn from

1964), cert. denied 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965): lack of any doubt clearly established; shown to be a sham, frivolous, or so insubstantial that a trial would be futile; *Minnesota Mining and Manufacturing Co. v. United States Rubber Co.,* 279 F.2d 409 (4th Cir.1960): hearsay not sufficient; *Atlas Insurance v. Standard Buick,* 264 F.2d 440 (7th Cir. 1959): no admissible evidence from which it could be reasonably inferred; *Subin v. Goldsmith,* 224 F.2d 753 (2d Cir.1955): not if credibility question; this is one of the classic summary-judgment cases involving a majority opinion by Frank, J.; *Repsold v. New York Life Insurance Company,* 216 F.2d 479 (7th Cir.1954): plausible grounds for the maintenance; *Dyer v. MacDougall,* 201 F.2d 265 (2d Cir.1952): directed verdict status sufficient. Special concurrence rejects directed verdict rule if question is credibility; this is the second of the classic-cases opinions, by Hand, J., with Frank J., specially concurring; *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568 (10th Cir.1946): power to pierce flimsy and transparent veil be temperately and cautiously used lest abuse reap nullification; *Arnstein v. Porter,* 154 F.2d 464 (2d Cir.1946); slightest doubt as to the facts; not granted if determined by reliability of witnesses; this is another of the classic cases by Frank, J., Clark, J., dissenting; "adscititious fortuity inherent in the stated standard," id. at 476; *Topp-Cola Co. v. Coca-Cola Co.,* 185 F.Supp. 700 (S.D.N.Y.1960): not create credibility issue by stating in response that movant's affidavit is false; *Frito-Lay v. Canas,* 92 F.R.D. 384: more than gossamer threads of whimsy speculation or conjecture do more than expect that something "may turn up at trial" or whet curiosity of the court by supporting vague accusation and surmise with concrete facts; *RFC v. First National,* 17 F.R.D. 397 (Wyo.1955): no matter how persuasive the evidence is, it is improper to anticipate the degree of such persuasiveness at trial, since a party is entitled to more than trial by anticipation; *Webb v. City and Borough of Sitka,* Alaska, 561

conflicting evidence. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1036 (10th Cir.1978)." *Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1270 (10th Cir. 1982).

See also *National Aviation Underwriters v. Altus Flying Service, Inc.,* 555 F.2d 778 (10th Cir.1977); *Exnicious v. United States,* 563 F.2d 418 (10th Cir.1977); *Madison v. Deseret Livestock Co.,* 574 F.2d 1027 (10th Cir.1978); *Avrick v. Rockmont Envelope Co.,* 155 F.2d 568 (10th Cir.1946).

This court, although not necessarily separately defining the sufficiency of the responsive affidavit, has said:

P.2d 731 (1977): if reasonable minds draw different inferences and reach different conclusions to be reserved for trial; *Alaska-Canadian Corporation v. Ancow Corporation,* Alaska, 434 P.2d 534 (1967): eliminate by exposure, superficial issues created by innuendo instead of direct allegation of fact; *Blair v. Pitchess,* 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242 (1971): strictly construed against movant and liberally construed in favor of respondent, with any doubt resolved in favor of respondent; *School District No. 6 in Weld County v. Alfred Watts Grant and Associates,* 156 Colo. 328, 399 P.2d 101 (1965): drastic remedy never warranted except on clear showing that no divergent inferences could be drawn permitting contrary results; *Mechtly v. Price,* Kan., 536 P.2d 1385 (1975): surmise or belief of trial court, no matter how reasonable, is not sufficient to grant summary judgment; record show conclusively no genuine issue; search record for a reasonable doubt; *Essmiller v. South West Bell Tel. Co.,* 215 Kan. 74, 524 P.2d 767 (1974): not evade with hope something may develop at trial; *Cheyenne Western Bank v. Young,* 179 Mont. 492, 587 P.2d 401 (1978): respondent present facts as material and substantial and not fanciful, gauzy, frivolous, nor merely suspicious; *Pharmaseal Laboratories, Inc. v. Goffe,* 90 N.M. 753, 568 P.2d 589 (1977): respondent given benefit of all reasonable doubts to determine if issue exists; *Meadows v. Grant's Auto Brokers, Inc.,* 71 Wash.2d 874, 431 P.2d 216 (1967): scrutinize with case movant's affidavit and indulge leniency to respondent's affidavit but not to permit overtreading on the indulgence of the court since there must be a genuine issue of material fact to be tried; Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2726, p. 521: if credibility is question, summary judgment not appropriate, and id., § 2727 p. 550: slightest-doubt test affords misleading gloss on genuine issue as a more narrow approach than warranted with better rule to be benefit of all reasonable doubt.

"* * * 'Summary judgment should not be granted where contradictory inferences may be drawn from undisputed evidentiary facts.' [Citation.] 'Even where the facts bearing upon the issue of negligence are undisputed, * * *, if reasonable minds could reach different conclusions and inferences from such facts, the issue must be submitted to the trier of fact.' [Citation.] ' "Evaluative judgment between two rationally possible conclusions from facts cannot be engaged in on summary judgment." ' [Citation.] 'Summary judgment is not appropriate where the record, including documents and pleadings, establishes facts which give rise to contradictory inferences, one of which supports the party opposing the motion.' [Citation.]" *Fegler v. Brodie*, Wyo., 574 P.2d 751, 754 (1978).

"* * * The motion for summary judgment is a drastic remedy and one which is designed to pierce the formal allegations and reach the merits of the controversy—but only when no material issue of fact is present. [Citations.] * * * Although both parties are obligated to come forward with their evidence, the burden is on the moving party to demonstrate *clearly* that there is no genuine issue of material fact and if that is not done, the motion for summary judgment should be denied. This court looks at the record from the viewpoint most favorable to the party opposing the motion, giving to him all favorable inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions. [Citations.] * * *

"* * * If the evidence is subject to conflicting interpretations or reasonable minds might differ as to its significance, summary judgment is improper" *Weaver v. Blue Cross-Blue Shield of Wyoming*, Wyo., 609 P.2d 984, 986–987 (1980).

Precedentially significant are the credibility and the reasonable-inference principles. *Rutherford v. American Bank of Commerce*, 565 F.2d 1162 (10th Cir.1977); *Greaser v. Williams*, supra.

If the melange and compendium of cases can be critiqued with any consistency, the conclusion could be derived that two standards implicitly exist as differently defined by semantic characterization.

The narrow approach is the slightest-doubt criterion, the broader and probably better answer as an issue test is the benefit-of-all-reasonable-doubt standard, Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2727, p. 550.[7]

We would synthesize the general principles advanced by some Wyoming cases and general standards of many well-reasoned cases from the federal courts and other states:

(a) The motion for summary judgment is a drastic remedy and one which is designed to pierce the formal allegations and reach the merits of the controversy—but only when no material issue of fact is present. Although both parties are obligated to come forward with their evidence, the burden is on the moving party to demonstrate that there is no genuine issue of material fact.

(b) The court should scrutinize with care movant's affidavits and indulge leniency to respondent's affidavits but not to permit overtrading on the indulgence of the court since there must be a genuine issue of a material fact to be tried after looking at the record from the viewpoint most favorable to respondent and giving to him all favorable inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions.

(c) When credibility is to be tested, the witnesses should testify at trial.

(d) Cross-motions do not concede the absence of factual issues.

(e) Finally, then, to determine whether the evidence is in factual dispute or subject to conflicting interpretation or of

---

**7.** A third or sub standard which may be comparable to the second standard is to state the question as a person test rather than an issue test, as to whether reasonable persons could differ, *Weaver v. Blue Cross-Blue Shield of Wyoming*, supra.

differing significance with respondent afforded the benefit of reasonable doubt.

Summarized as the legal standard:

■ The motion for summary judgment should be sustained in the absence of a real and material fact issue considering movant's burden, respondent's right to the benefit of all favorable inferences and any reasonable doubt, with credibility questions to be resolved by trial.[8]

■ To thus conclude on this subject, we cannot sustain the trial court decision on the basis of the issue of substantive insufficiency of the respondent affidavits to state a triable fact issue.

## V

### Parol Evidence

The case would then be determined in final inquiry by considering whether the responsive Cordova affidavit failed due to evidentiary inadmissibility by virtue of its failure to "set forth such facts as would be admissible in evidence." Rule 56(e), W.R. C.P.

We so hold and consequently affirm.

Obviously, as a self-standing principle, an agreement of the character suggested by Cordova that Gosar would own or rent the property for free until she returned to the old country, and then that the property would be vested in Cordova, could fall within the statute of frauds as a contract not carried into effect within a period of one year. See *Miller v. Stovall*, Wyo., 717 P.2d 798 (1986). However, the statute of frauds has not been raised by Gosar as a defense to the Cordova agreement testimony presented by them to deny contentions of

mutual mistake.[9] If the case were to be remanded, it could then be further considered and might in itself be dispositive.

■ The district court correctly concluded that consideration of extrinsic evidence for the purpose of showing that there had been a mutual mistake *does not* violate the parol-evidence rule. The court was also correct in determining that extrinsic evidence submitted for the purpose of showing that an oral agreement was made contemporaneous to the written agreement which added to the terms of the written agreement *does* violate the parol-evidence rule. Therefore, the court properly considered the affidavits submitted by Mrs. Gosar while disregarding the affidavit of Mr. Cordova which explained the oral "old country" agreement.

The parol-evidence rule as it relates to this case may be explained as follows:

"* * * Where there is nothing ambiguous or uncertain in the terms of a deed it speaks for itself, and parol evidence tending to show a prior or contemporaneous oral agreement or tacit understanding with respect to the terms of the conveyance is inadmissible. *Pinsky v. Sloat*, 130 Cal.App.2d 579, 279 P.2d 284." *Rock v. Birdwell*, 149 Mont. 449, 429 P.2d 634, 639 (1967).

*McReynolds v. McReynolds*, 147 Mont. 476, 414 P.2d 531, 534 (1966).

There are exceptions to the parol-evidence rule, one being the situation where a mutual mistake has occurred:

"* * * The general rule is that parol evidence may not contradict, vary, or add to deeds. This Court, however, has recognized mutual mistake as an exception,

---

8. Discussed by the trial court in this case and by textwriters is a differentiation between jury and nonjury trials for analyzing the burden of proof to determine the sufficiency of responsive affidavits. The rule is not generally approved by specific cases that discuss the question. *Subin v. Goldsmith*, supra n. 6. See, however, Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 477.

9. *Kincheloe v. Milatzo*, Wyo., 678 P.2d 855 (1984); *Bereman v. Bereman*, Wyo., 645 P.2d

1155 (1982); *Jim's Water Service, Inc. v. Alinen*, Wyo., 608 P.2d 667 (1980); *Davison v. Nicholson*, 37 Wyo. 412, 263 P. 605 (1928).

In this regard, we would agree with the special concurrence of Chief Justice Thomas *if the statute of frauds had been raised* by respondent or considered by the trial court. Likewise, neither had a factual determination and legal decision on adverse possession been made by the trial court, although probably appropriate.

even if the property description is definite and certain. This Court has said that one type of mistake justifying reformation is where the deed fails 'to conform to what both parties intended.' " *Neeley v. Kelsch,* supra, 600 P.2d at 981.

The Wyoming Supreme Court delineated the parol-evidence rule when it said in *Cary v. Manfull,* 41 Wyo. 476, 287 P. 433, 435 (1930), "[n]othing can be added to or taken from the contract, except for fraud or mistake;" and then said in *Russell v. Curran,* 66 Wyo. 173, 206 P.2d 1159, 1166–1167 (1949):

"It is proper to note also that in *Stoll v. Nagle,* 15 Wyo. 86, 86 P. 26, 28, this court has recognized the rule that parol evidence is admissible to reform an instrument on account of mistake and it was remarked that there can be no doubt of the rule's correctness. In the same case Mr. Justice Beard also said that: 'The mistake, however, must have been a mutual one. There must have been a meeting of the minds and a contract actually entered into, but, by reason of the mistake, the instrument as written does not express what was really intended by the parties. Both the mistake and its mutuality must be established by evidence that is clear and satisfactory.'

"These rules were reiterated in *Grieve v. Grieve,* 15 Wyo. 358, 89 P. 569, 9 L.R.A., N.S., 1211, 11 Ann.Cas. 1162."

For another case where parol evidence was admitted to show that the litigants had agreed to the sale of property and by mistake the deed described the intended property plus an additional parcel, see *Sonnenberg v. Ashby,* 17 Ariz.App. 60, 495 P.2d 500 (1972).

We think it was entirely proper for the district court to consider affidavits submitted by Mrs. Gosar to show that the deed covered more property than she intended to sell and more property than the Cordovas at the time believed that they were buying.

Conversely, the district court, as earlier quoted in this opinion, invoked the parol-evidence rule to find that Mr. Cordova's affidavit was inadmissible.

Mr. Cordova submitted his affidavit for the purpose of showing that an oral agreement, made prior to or contemporaneous with the contract for sale, added to the terms of the written agreement a verbal understanding that Mrs. Gosar had actually intended to sell her home but could stay there until she returned to Yugoslavia. This evidence is clearly inadmissible under the parol-evidence rule as set out in the language already quoted in this opinion from *Rock v. Birdwell,* supra. *Laird v. Laird,* Wyo., 597 P.2d 463 (1979).

While it may seem harsh to find the oral evidence submitted by one party admissible under an exception to the parol-evidence rule while finding the oral evidence of the other party then inadmissible, an explanation of the reasoning behind the rule may be helpful and afford justification:

" * * * The rule has been developed to effectuate two important policies. The first has its basis in the assumption that the written evidence is more accurate than human memory. *Masterson v. Sine,* 68 Cal.2d 222, 65 Cal.Rptr. 545 [548], 436 P.2d 561, 564 (1968); *Garrett v. Ellison,* 93 Utah 184, 72 P.2d 449 (1937). By elevating this assumption to the level of a presumption of law, it renders contractual undertakings more certain when they are reduced to an integrated writing. *Zone Co. v. Service Transp. Co.,* 137 N.J.L. 112, 57 A.2d 562 (1948); *Tees v. Lee,* 234 Wis. 607, 291 N.W. 792 (1940). Secondly, it reduces the opportunities for innocent parties to be victimized by the fraud or perjury of others. *Masterson v. Sine,* 65 Cal.Rptr. at 548, 436 P.2d at 564; *In re Tomarchio,* 269 F. 400 (E.D.Mo.1920); *Bauer v. Monroe,* 117 Mont. 306, 158 P.2d 485, 489 (1945)." *Kupka v. Morey,* Alaska, 541 P.2d 740, 747–748, n. 9 (1975).

The Court of Appeals of Washington capably summarized this issue in *Schinnell v. Doyle,* 6 Wash.App. 830, 496 P.2d 566, 568–569 (1972) when it said:

"Parol evidence is admissible only if a contract is ambiguous as a matter of law. Such evidence should not be introduced

for the purpose of creating ambiguity but should be admitted only when the court has determined that parol is necessary in order to explain or remove ambiguity apparent on the face of the instrument. [Citations.] Where a contract is not ambiguous, its meaning should be ascertained from the language of the contract and not from parol evidence concerning it. [Citation.]

" '[W]here there is no ambiguity, all conversations, contemporaneous negotiations, and parol agreements between the parties prior to a written agreement are merged therein. In the absence of accident, fraud or mistake, parol evidence is not admissible for the purpose of contradicting, subtracting from, adding to, or varying the terms of such written instruments.'

"*Fleetham v. Schneekloth,* 52 Wash.2d 176, 178, 324 P.2d 429, 430 (1958). The rule is controlling even though one of the parties contends, as here, that part of the agreement had been committed to writing and another part of the transaction. was embodied in an oral agreement. [Citation.]"

Initial logic might be found in the argument of Cordova that if Gosar is entitled to use parol evidence to contend for a mutual mistake in an erroneous description, then the buyer should be entitled to use parol evidence to explain by other understandings how the developing factual situation is consistent with the original written agreement. The dilemma afforded, in addition to the parol-evidence dispositive rule already discussed, is that a remand trial might not reasonably be expected to present further evidence which could make the "old country" agreement realistically very credible in the face of the action of Cordova in failing to wait until Gosar in fact returned to the old country. *Laird v. Laird,* supra.

Judgment affirmed.

THOMAS, Chief Justice, specially concurring.

I agree that the grant of summary judgment by the district court should be upheld in this case. I would do that, however, on the grounds that the record discloses that whatever may have been the situation with respect to the deed from Antonia Gosar to the Cordovas, and even conceding a transfer of the property at 417 Tisdel to them, this record discloses as a matter of law that she re-acquired title by adverse possession. I am satisfied that the record discloses all of the elements of adverse possession in accordance with our Wyoming precedents. *Harsha v. Anastos,* Wyo., 693 P.2d 760 (1985); *Doenz v. Garber,* Wyo., 665 P.2d 932 (1983); *Farella v. Rumney,* Wyo., 649 P.2d 185 (1982); and *Shores v. Lindsey,* Wyo., 591 P.2d 895 (1979). The only refutation of the establishment of title in Antonia Gosar by adverse possession following the deed to the Cordovas is found in the affidavit of Elmer Cordova to the effect that her possession of the property was consensual because of an apparent lease arrangement.

As I analyze Elmer Cordova's affidavit he is asserting that Antonia Gosar was permitted to remain in the residence at 417 Tisdel until she "went back to the old country" and that the agreement was that she would pay the taxes and insurance in lieu of rent. In substance this describes a lease for a term longer than one year which is required to be in writing under our version of the statute of frauds. § 1–23–105, W.S. 1977. It follows for me that Elmer Cordova's recitation in his affidavit of a lease arrangement for a term in excess of a year that is not in writing is not competent evidence. It, therefore, is subject to being ignored in accordance with Rule 56, W.R. C.P. because the facts presented by affidavit to the district court must be admissible evidence. When these contentions of Elmer Cordova's affidavit are ignored, there is nothing to refute the record showing of adverse possession in Antonia Gosar. This case is thus distinguishable from *Harsha v. Anastos,* supra.

For this reason I would agree to affirm the summary judgment of the district court.

BROWN, Justice, specially concurring.

I concur in the result. The majority opinion is the product of a prodigious amount of valuable research and compilation.

Were I writing for the majority I would try to be less detailed, but the result would be the same.

MACY, Justice, concurring.

I concur in the result based on the well-established standards governing appellate review of summary judgments. The related matters contained in the majority opinion would, however, be more appropriately addressed in a law review article.